IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

DEC 24 2009

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,               )
                                    )       2 CA-CR 2008-0341
                        Appellee,   )       DEPARTMENT B
                                    )
            v.                      )       O P I N I O N
                                    )
MAXAMILANO PAREDES-SOLANO,          )
                                    )
                        Appellant.  )
                                    )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20070945

Honorable Howard Fell, Judge Pro Tempore

AFFIRMED IN PART;
VACATED AND REMANDED IN PART

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Amy M. Thorson                              Tucson
                                                      Attorneys for Appellee

Robert J. Hirsh, Pima County Public Defender
  By M. Edith Cunningham                                             Tucson
                                                     Attorneys for Appellant

V Á S Q U E Z, Judge.

¶1 Maxamilano Paredes-Solano appeals his convictions for two counts of sexual exploitation of a minor under fifteen years of age and a single count of child molestation, for which he was sentenced to serve thirty-four years in prison. He contends the trial court's sexual exploitation instructions to the jury were erroneous because they rendered the charges duplicitous and permitted the jury to reach potentially nonunanimous verdicts.[1] He also contends the court erred in giving the reasonable doubt instruction required by *State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995), and asserts he was entitled to an instruction on jury nullification. For the reasons set forth below, we affirm Paredes-Solano's conviction and sentence for child molestation but vacate his convictions and accompanying sentences for sexual exploitation of a minor and remand to the trial court for further proceedings.

**Facts and Procedure**

¶2 We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the jury's verdicts. *See State v. Tucker*, 205 Ariz. 157, n.1, 68 P.3d 110, 113 n.1 (2003). On February 23, 2007, Paredes-Solano took two rolls of film into a Walgreens store to be developed. After developing the film, a Walgreens employee called the police because some of the pictures depicted what appeared to be a young girl's genitalia

---

[1]Paredes-Solano has raised two other issues related to the sexual exploitation charges. He contends count one resulted in a duplicitous charge for the additional reason that two separate photographs were introduced as evidence of the offense and the jury instruction failed properly to define the term "other sexual conduct." However, because of our resolution of this issue *infra*, we find it unnecessary to address these issues.

2

and the same girl holding a man's penis. Paredes-Solano, whose appearance matched that of the man in the photographs, was arrested at the Walgreens on February 26 when he returned to pick up the pictures. Detectives later identified the child in the photographs who was five years old when they were taken.

**¶3**    Paredes-Solano was charged with two counts of sexual exploitation of a minor and one count of child molestation; the indictment alleged all three offenses were dangerous crimes against children. The jury found Paredes-Solano guilty of all three charges as alleged in the indictment, and the trial court sentenced him to an enhanced, presumptive seventeen-year prison term on each count. *See* A.R.S. § 13-705(D) (providing presumptive sentence of seventeen years for specified dangerous crimes against children). The court ordered the two sentences for sexual exploitation served consecutively to each other and the sentence for child molestation served concurrently with the sentences imposed on the other two counts. This appeal followed.

**Discussion**

**I. Duplicitous Indictment**

**¶4**    Both parties have characterized the issue here as whether the jury instruction on sexual exploitation of a minor resulted in a duplicitous charge. A duplicitous charge exists "[w]hen the text of an indictment refers only to one criminal act, but multiple alleged criminal acts are introduced to prove the charge." *State v. Klokic*, 219 Ariz. 241, ¶ 12, 196 P.3d 844, 847 (App. 2008). A duplicitous charge is different than a duplicitous indictment,

3

which "charges 'two or more distinct and separate offenses in a single count.'" *Id.* ¶ 10, *quoting State v. Schroeder*, 167 Ariz. 47, 51, 804 P.2d 776, 780 (App. 1990).

**¶5**        The indictment alleged that Paredes-Solano had committed sexual exploitation by "possessing, recording, filming, photographing, developing or duplicating" visual depictions of a minor "engaged in exploitive exhibition or other sexual conduct." Paredes-Solano argues that, because "'[p]hotographing' and 'developing' appear in A.R.S. § 13-3553(A)(1) while 'transporting' and 'possessing' appear in subsection (A)(2)[, t]his evidences a legislative intent to create separate offenses," which he contends cannot be charged in a single count.[2]   Because he challenges the joinder in a single count of the indictment of multiple criminal acts described in two subsections of the statute, his argument is not that the evidence introduced at trial rendered the charge duplicitous, but, rather, that the indictment is duplicitous on its face. *See, e.g.*, *Klokic*, 219 Ariz. 241, ¶¶ 10-13, 196 P.3d at 846-47 (finding defendant raised claim of duplicity to charge rather than indictment where indictment charged single act of aggravated assault by intentionally placing victim in reasonable apprehension of imminent physical injury and state produced evidence defendant had pointed gun at victim on two separate occasions).

---

[2]During the settling of jury instructions, the indictment apparently was amended to conform to evidence that Paredes-Solano had transported the visual images, a criminal act that had not been alleged in the original indictment. Paredes-Solano did not object to the amendment below, and he does not raise the issue on appeal.

4

**¶6** Objections to an indictment must be raised at least twenty days before trial, Ariz. R. Crim. P. 13.5(e), 16.1(b); *see also State v. Anderson*, 210 Ariz. 327, ¶ 16, 111 P.3d 369, 377-78 (2005), and the failure to do so forfeits the objection absent fundamental error. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). Although Paredes-Solano did not object here until the close of evidence,[3] at oral argument before this court, defense counsel argued a harmless error standard should apply because Paredes-Solano preserved the issue below by bringing the possibility of a nonunanimous jury verdict to the court's attention before it instructed the jury. Counsel conceded the indictment was duplicitous on its face but argued "that is not the issue here. The issue here is whether there was the possibility of a nonunanimous verdict." And she contended jury unanimity is a "separate issue which can arise from a duplicitous indictment but need not arise from a duplicitous indictment." Thus, she maintains this court should consider the issue preserved because the "duplicitous indictment wouldn't have caused a problem if the [trial] court had heeded defense counsel's advice that the way that it was instructing the jury would create the possibility of a nonunanimous verdict."

**¶7** "We require pretrial objections to an indictment in order to allow correction of any alleged defects before trial begins. If a defendant makes a timely objection, the State can remedy any duplicity by filing a new indictment charging multiple counts, thus exposing

---

[3]Paredes-Solano objected only to an instruction that stated the jurors need not agree unanimously that he had committed a particular act, as long as each juror agreed he had committed at least one of the acts charged.

a defendant to multiple penalties." *Anderson*, 210 Ariz. 327, ¶ 17, 111 P.3d at 378. Yet, Paredes-Solano failed until the last moment to bring the issue to the court's attention, thus "avoiding the potential of multiple punishments by depriving the State of an opportunity to amend." *Id.* He cannot now benefit from that gamble. *Id.*

¶8 The possibility of a nonunanimous jury verdict was a direct result of the duplicitous indictment. That the error may have been curable at a later stage of the proceedings does not relieve Paredes-Solano of his burden to object to the indictment in a timely manner. Thus, by failing to object before trial, he has waived all but fundamental error review. *Cf. Klokic*, 219 Ariz. 241, ¶ 13, 196 P.3d at 847 (defendant preserved duplicity objection not raised prior to trial because "asserted error [went] not to the indictment on its face, but to the evidence presented to prove a count of the indictment"). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice."[4] *Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607.

¶9 As noted above, a duplicitous indictment charges two or more separate offenses within a single count. In this case, both counts of sexual exploitation in the indictment alleged acts that violated two different subsections of § 13-3553(A). "[T]here is a class of

---

[4]Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984).

criminal statutes that defines a specific crime and provides ways in which the crime may be committed, and another class that may set forth several distinctive acts and make the commission of each a separate crime, all in one statute." *State v. Dixon*, 127 Ariz. 554, 561, 622 P.2d 501, 508 (App. 1980). It is thus our task to interpret the language of this statute and determine in which class the legislature intended § 13-3553 to fall. *See State v. Fell*, 209 Ariz. 77, ¶ 33, 97 P.3d 902, 911 (App. 2004).

¶10 We begin with the language of the statute. Section 13-3553 provides, in pertinent part:

> A. A person commits sexual exploitation of a minor by knowingly:
>
> 1. Recording, filming, photographing, developing or duplicating any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct.
>
> 2. Distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct.

These two subsections identify a variety of discrete actions involving visual images of minors engaged in "exploitive exhibition or other sexual conduct." The text reveals a difference in the types of actions listed in the two subsections: the acts listed in subsection (A)(1) are directed at the creation of a visual image whereas those in subsection (A)(2) can only occur after an image has been created. Thus, the statute addresses two separate harms—the creation of visual images and their subsequent distribution and viewing. This suggests a

7

legislative intention to create two separate offenses, each encompassing a distinct phase of the child pornography production and distribution process. *See State v. Taylor*, 160 Ariz. 415, 420, 773 P.2d 974, 979 (1989) ("The legislature has provided for separate punishment for sexual exploitation of a minor by photographing the minor, A.R.S. § 13-3553(A)(1), and sexual exploitation of a minor by possessing a photograph of the minor[,] A.R.S. § 13-3553(A)(2).").

¶11          Many courts, including both the United States and Arizona Supreme Courts, have recognized these harms as distinct, separable injuries to the child victim. In *New York v. Ferber*, the Supreme Court acknowledged:

> "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

458 U.S. 747, 759 n.10 (1982), *quoting* David P. Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L. Rev. 535, 545 (1981). *See also, e.g., Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("[T]he materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come."); *United States v. Norris*, 159 F.3d 926, 929-30 (5th Cir. 1998) ("Unfortunately, the 'victimization' of the children involved does not end when the pornographer's camera is put

away. The consumer . . . of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways"—perpetuation of original abuse, invasion of children's privacy, and instigation of original production of such materials by supplying economic incentive.); *State v. Berger*, 212 Ariz. 473, ¶ 18, 134 P.3d 378, 382 (2006) (child pornography victims harmed not only by production of images but also by invasion of privacy in others' continued possession of such images).

¶12        Our interpretation is confirmed by the legislature's stated purposes in enacting what is now § 13-3553. *See* 1978 Ariz. Sess. Laws, ch. 200, §§ 2, 3. Its findings included:

> The use of children as subjects in the production of pornographic materials is very harmful to both children and society as a whole.
>
> . . . .
>
> Pornographic materials depicting children as participants are frequently utilized to lure other children into sexual conduct resulting in the further sexual exploitation of children.
>
> [D]istribution of child pornography is harmful to the children of this state in that such distribution is a continuing cause of harm to the child participants and that it further develops the climate encouraging the sexual exploitation of other children.

*Id.* § 2. Consequently, the legislature stated:

> The public policy of this state and the general purposes of the provisions of this act relating to sexual exploitation of children are:

9

1. To protect all children of this state from being sexually exploited.

2. To prohibit any conduct which causes or threatens psychological, emotional, or physical harm to children as a result of such sexual exploitation.

. . . .

4. To impose just and deserved punishment on those who sexually exploit children.

*Id.*

¶13 Thus, our legislature has recognized the various ways in which victims are harmed by the production and proliferation of child pornography and has stated its intention to "impose just and deserved punishment on those who sexually exploit children." Notably, in other areas involving crimes against children, the legislature similarly has sought to "impose separate and severe punishment for each and every dangerous crime against children," recognizing "each factually distinct act . . . expose[s the child] to a separate harm." *See State v. Boldrey*, 176 Ariz. 378, 381, 861 P.2d 663, 666 (App. 1993) (holding constitutional mandatory consecutive sentences for multiple criminal acts occurring during single "sexual episode" with minor); *see also* § 13-705(P)(1)(g).

**¶14** In its answering brief the state contended[5] the statute defining sexual exploitation of a minor is like the statutes defining first-degree murder, kidnapping, and theft, A.R.S. §§ 13-1105 (first-degree murder), 13-1304 (kidnapping), 13-1802 (theft),[6] all of which the courts of this state have held describe a single offense despite providing in multiple subsections different ways to commit the offense. *See State v. Herrera*, 174 Ariz. 387, 394, 850 P.2d 100, 107 (1993) (kidnapping); *State v. Encinas*, 132 Ariz. 493, 496-97, 647 P.2d 624, 627-28 (1982) (first-degree murder); *Dixon*, 127 Ariz. at 561, 622 P.2d at 508 (theft). However, each of these statutes focuses on a single harm to the victim—death, restraint without consent, or deprivation of control over one's property—and the subsections merely provide different ways of causing that single harm.

**¶15** In contrast, the statute defining sexual exploitation of a minor lists a number of distinct acts, grouped together in separate subsections by the type of harm they cause. The

---

[5]At oral argument, the state conceded § 13-3553 contains multiple offenses and the indictment in this case was duplicitous. However, because this appears to be a question of first impression and involves the interpretation of a statute, we nonetheless address the issue in full.

[6]The state also cites the aggravated assault statute, A.R.S. § 13-1204(A), as another example of a statute listing various ways of committing an offense but not defining multiple offenses. However, although one division of this court has so concluded, *see State v. Pena*, 209 Ariz. 503, ¶ 12, 104 P.3d 873, 876 (App. 2005), it did so without referring to a prior case that held charging multiple subsections of § 13-1204(A) within a single count rendered the indictment duplicitous, *see State v. Kelly*, 149 Ariz. 115, 116-17, 716 P.2d 1052, 1053-54 (App. 1986). *Cf. In re Jeremiah T.*, 212 Ariz. 30, ¶ 12, 126 P.3d 177, 181 (App. 2006) (Sixth Amendment notice issue in case charging simple assault; "subsections of 12-1203(A) are not simply variants of a single, unified offense; they are different crimes"); *State v. Sanders*, 205 Ariz. 208, ¶ 33, 68 P.3d 434, 442 (App. 2003) (same).

actions listed in subsection (A)(1) cause harm to the child in the creation of the visual images, while the acts in subsection (A)(2) harm the child through the perpetuation of those images. Each subsection is violated by distinctly different conduct causing different kinds of harm to the child. The two subsections thus represent more than merely different ways of committing a single offense and, we conclude, create offenses that are separate and distinct.

¶16 Here, counts one and two of the indictment allege six separate criminal acts drawn from the two subsections in § 13-3553(A). At trial, the state produced evidence of four acts: photographing, developing, transporting, and possessing images. Photographing and developing are violations of § 13-3553(A)(1); transporting and possessing are violations of subsection (A)(2). Thus, the indictment alleged multiple offenses within a single count and was duplicitous on its face.

¶17 That an indictment is duplicitous does not, by itself, require reversal; a defendant must prove actual prejudice. *State v. Hamilton*, 177 Ariz. 403, 410, 868 P.2d 986, 993 (App. 1993). Paredes-Solano contends that, because he presented different defenses to the acts alleged and the trial court took no curative measures, the "jury's verdicts for counts one and two could have been non-unanimous," and he is therefore entitled to relief. We agree. A duplicitous indictment is "forbidden because it does not provide 'adequate notice of the charge to be defended, . . . present[s] a hazard of a non-unanimous jury verdict, and . . . make[s] a precise pleading of prior jeopardy impossible in the event of a later

12

prosecution.'" *State v. Davis*, 206 Ariz. 377, ¶ 54, 79 P.3d 64, 76 (2003), *quoting State v. Whitney*, 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989). However, the error potentially resulting from such an indictment may be cured when the basis for the jury's verdict is clear, when the state elects for the jury which act constitutes the crime, or when the trial court instructs the jury that it must agree unanimously on the specific act constituting the crime. *See State v. Schroeder*, 167 Ariz. 47, 53, 804 P.2d 776, 782 (App. 1990) (error cured where clear from verdict jury accepted victim's version of events over defendant's).

¶18        The error here was not cured by the state's election of a single act as constituting each offense or by a jury instruction requiring unanimity. While the parties were settling jury instructions, the state argued, "The statute, the way 'sexual exploitation of a minor' is drafted and written, it's analogous to a lot of the statutes that we have in the criminal code, that . . . the jurors don't all have to agree as to which theory." Paredes-Solano objected:

> [T]here are many different ways that you can . . . [commit] sexual exploitation . . . [,] but I think that, based on the evidence, there's only one theory they can agree on if they find him guilty. I don't think it's a multiple-choice situation. . . . And I think it precludes a unanimous verdict if it's a multiple-choice situation. . . . It's also duplicitous because they can say you can either find him guilty because of this or you can find him guilty because of that, and I don't think that's appropriate and I don't think that's constitutional.

The trial court overruled his objection and instructed the jury it could find Paredes-Solano guilty if it found he had "knowingly photograph[ed] or develop[ed] any visual depiction in

13

which minors are engaged in exploitive exhibition or other sexual conduct or transport[ed] or possess[ed] any visual depiction in which minors are engaged in exploitive exhibition or other sexual conduct." During closing arguments, the prosecutor told the jury:

> [W]hen you go back to the jury deliberation room, you all don't have to agree on which of the four [acts] it is. Six of you could say he took those pictures. Four of you could say he possessed that film. Two of you could say he had that film developed. Just as long as you all find one, you don't have to agree on which one.

Thus, far from being cured, the error was exacerbated during jury instructions and the state's closing argument.

¶19 Nor was the basis for the jury's verdict otherwise discernible. For the first time at oral argument, the state asserted Paredes-Solano was not prejudiced by the duplicitous indictment because this court could conclude that no reasonable juror could have failed to find he had photographed the child. It argued that because Paredes-Solano was convicted of molestation of a child based on the photograph depicting the child holding a man's penis, the jurors must necessarily have concluded he was the man in the photograph. It further asserted that because the jury had concluded Paredes-Solano was the man in the photograph, and a police officer testified the photograph was taken by the man depicted in it, the jurors necessarily must have concluded he was the person who took the photograph. However, the officer's testimony on this issue was, at best, equivocal. After stating the man in the photograph was also the photographer based on the camera angle and a dangling camera strap appearing in the image, the officer conceded on cross-examination that another person

14

had access to the camera to take some of the pictures on the same roll of film, and on redirect he merely stated the person taking the picture "would have to be somebody other than [the child]." In order for the jury to have convicted him of child molestation, it necessarily had to find Paredes-Solano was the man depicted in the photograph. But, a legitimate question of fact remained whether he was the person who took the pictures, thereby also committing sexual exploitation of a minor, and the jury was not bound to accept the officer's testimony on that issue. There is thus no basis upon which we could conclude as a matter of law that the jury necessarily reached this conclusion.

¶20 Moreover, during trial, Paredes-Solano presented multiple defenses to the various acts with which he was charged. He defended against the photographing allegation by arguing "that somebody other than . . . Paredes[-Solano] had access to th[e] camera . . . because we have pictures of [him] that he obviously didn't take himself." And, although he admitted taking the film to Walgreens to be developed, he claimed he did not know he was transporting, developing, or possessing sexually exploitive photographs:

> When [Paredes-Solano] dropped off those pictures, he had to knowingly possess what was in those pictures. . . . Would he take pictures to a Walgreens to get developed knowing that kind of stuff was in there? . . . [When he dropped it off h]e said that the film is for his mother. And you remember, there were two rolls of film, and one of the rolls may very well have been for his mother.

¶21 The date stamp on the photographs indicated they had been taken on February 12, 2007. Paredes-Solano took them to be developed on February 23, and he

15

returned to pick them up on February 26. Thus, some members of the jury may have believed Paredes-Solano took the photographs, whereas others may have believed someone else took them but that Paredes-Solano knew what was depicted on the film when he took it to be developed. Given the different dates on which the various acts occurred and Paredes-Solano's separate defenses to them, we cannot say the basis of the jury's verdicts was clear.

¶22        We are mindful the state presented substantial evidence Paredes-Solano had committed each of the actions alleged. This, however, is not the test. "Article 2, Section 23 of the Arizona Constitution guarantees a defendant the right to a unanimous jury verdict in a criminal case. A violation of that right constitutes fundamental, [reversible] error." *Davis*, 206 Ariz. 377, ¶ 64, 79 P.3d at 77; *see State v. Woods*, 141 Ariz. 446, 456, 687 P.2d 1201, 1211 (1984) ("[W]e agree that violation of the constitutional right to a unanimous verdict would constitute fundamental error and could be raised for the first time on appeal."); *Klokic*, 219 Ariz. 241, ¶ 24, 196 P.3d at 849 (discussing *Davis*; where possibility of nonunanimous verdict existed, "in the absence of appropriate curative measures by the trial court, such an error required reversal"); *see also State v. Thompson*, 138 Ariz. 341, 346, 674 P.2d 895, 900 (App. 1984) ("Since there are two separate crimes involved, it is clear that the jury's verdict was void. It would be as if the jury had convicted someone of grand theft *or* burglary. Of which crime did the jury convict him?") (citation omitted).[7] Paredes-Solano was deprived

---

[7]We recognize that *Davis* and *Klokic* concerned duplicitous charges rather than duplicitous indictments. However, because a duplicitous charge "presents the same problems as a duplicitous indictment," including "creat[ing] the 'hazard of a non-unanimous jury

of his right to a unanimous jury verdict on the counts of the indictment charging sexual exploitation of a minor, and the error, therefore, was both fundamental and prejudicial.

## II. *Portillo* Instruction

¶23       The trial court gave the reasonable doubt instruction required by our supreme court in *State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995). Paredes-Solano contends the instruction resulted in structural error because it lowered the state's burden of proof. He cites cases from other jurisdictions concluding language similar to that in the *Portillo* instruction constituted reversible error. However, our supreme court has repeatedly reaffirmed the validity of the *Portillo* instruction in Arizona, *see, e.g.*, *State v. Garza*, 216 Ariz. 56, ¶ 45, 163 P.3d 1006, 1016-17 (2007), and we are not at liberty to overrule or disregard its rulings, *see State v. Foster*, 199 Ariz. 39, n.1, 13 P.3d 781, 783 n.1 (App. 2000).

## III. Jury-Nullification Instruction

¶24       Paredes-Solano also argues the trial court abused its discretion by not instructing the jury it could find him not guilty even if it found the state had proven its case beyond a reasonable doubt. Generally, a party is entitled to an instruction on any theory reasonably supported by the evidence, *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995), unless "'its substance is adequately covered by other instructions,' or it is an incorrect statement of law," *State v. Cox*, 214 Ariz. 518, ¶ 17, 155 P.3d 357, 361 (App. 2007), *quoting*

verdict,'" we find them instructive here. *Klokic*, 219 Ariz. 241, ¶ 12, 196 P.3d at 847, *quoting Davis*, 206 Ariz. 377, ¶ 54, 79 P.3d at 76.

17

*State v. Rodriguez*, 192 Ariz. 58, ¶ 16, 961 P.2d 1006, 1009 (1998). We review a trial court's denial of a requested jury instruction for an abuse of discretion. *Bolton*, 182 Ariz. at 309, 896 P.2d at 849. However, we review de novo whether the instruction correctly states the law. *State v. Fierro*, 220 Ariz. 337, ¶ 4, 206 P.3d 786, 787 (App. 2008).

¶25 Paredes-Solano requested the jurors be instructed, "You are . . . entitled to act upon your conscientious feeling about what is a fair result in this case and acquit the defendant if you believe strongly that conscience and justice require a verdict of not guilty. No one can require you to return a verdict that does violence to your conscience." He contends the trial court's refusal to give this instruction "deprived the jury of its prerogative to acquit [him] and deprived [him] of his federal and state constitutional right to a jury trial and due process." He maintains that, without this language, the court's reasonable doubt instruction—stating that if the jury was "firmly convinced that [Paredes-Solano] is guilty of the crime charged, [it] must find him guilty"—was misleading.

¶26 Paredes-Solano has not cited, nor have we found, any Arizona or federal authority supporting his argument that he was entitled to a jury nullification instruction. But, we find extremely persuasive the substantial jurisprudence from the federal courts concluding defendants are not entitled to such an instruction. It is true, as Paredes-Solano notes, that the jury's nullification power is "well-established." *See Jones v. United States*, 526 U.S. 227, 245-48 (1999). However, jury nullification is not the legal "right" of either the defendant or the jury; the jury merely has a power "to acquit on bad grounds, because the government is

18

not allowed to appeal from an acquittal by a jury." *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988). Thus, although a jury-nullification verdict must stand, such a verdict contravenes the law the jury has been instructed to follow in deciding the case. *United States v. Thomas*, 116 F.3d 606, 616 (2d Cir. 1997); *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam). Consequently, although "juries have the power to ignore the law in their verdicts, courts have no obligation to tell them they may do so." *United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996); *see also Thomas*, 116 F.3d at 616 n.9 ("[C]riminal defendants have no right to a jury instruction alerting jurors to this power to act in contravention of their duty."); *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) ("Although a jury is entitled to acquit on any grounds, a defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence.").

¶27 This result does not change merely because, as Paredes-Solano contends, the trial court instructed the jury it "must" convict if it found the state had proven guilt beyond a reasonable doubt. As we have noted, the court's reasonable doubt instruction correctly stated the law. Therefore, the court did not abuse its discretion in refusing to instruct the jury on its power of nullification.

**Disposition**

¶28        For the reasons stated, we affirm Paredes-Solano's conviction and sentence for child molestation, but we vacate his convictions and sentences for sexual exploitation and remand for further proceedings consistent with this opinion.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:

_____
PETER J. ECKERSTROM, Presiding Judge

_____
J. WILLIAM BRAMMER, JR., Judge