IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2012-0287 |
| | ) | DEPARTMENT B |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| MANUEL ALEJANDRO DELGADO, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20113521001

Honorable Paul E. Tang, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and Diane Leigh Hunt                                    Tucson
                                                                Attorneys for Appellee

Lori J. Lefferts, Pima County Public Defender
  By David J. Euchner and Michael T. Brooks                                    Tucson
                                                               Attorneys for Appellant

K E L L Y, Judge.

¶1         Manuel Delgado appeals from his convictions and sentences for one count each of aggravated assault and simple assault. He argues A.R.S. § 13-1204(B)(1), which provides that a person commits aggravated assault by "imped[ing] the normal breathing or circulation of blood of another person," is unconstitutionally vague. He also contends the trial court abused its discretion by denying his motion to preclude the testimony of a "strangulation expert" pursuant to Rule 702, Ariz. R. Evid. Finally, he argues that the information and charges were duplicitous and constituted fundamental error. We affirm.

**Factual and Procedural Background**

¶2         We view the facts in the light most favorable to upholding Delgado's convictions and sentences. *See State v. Becerra*, 231 Ariz. 200, ¶ 2, 291 P.3d 994, 996 (App. 2013). In October 2011, Delgado and D.H., who have a child in common, were living together. D.H. testified that after the two had been arguing via text message one day, Delgado came home from work, "grabbed" her shoulders, and "headbutted" her. He then put his hands around D.H.'s neck for a number of minutes, alternately "squeezing" and loosening his grip. When he squeezed her neck, D.H. could not talk or breathe. Delgado then left the home, but came back shortly thereafter, broke down the door, grabbed D.H. from behind, and pressed his forearm against her throat. Delgado eventually released D.H. and told her to leave.

¶3         Count one charged Delgado with aggravated assault for impeding D.H.'s breathing or circulation of blood; count two charged him with simple assault for "head butting" D.H.; and count three charged him with impeding D.H.'s breathing or circulation a "second time." After a jury trial, Delgado was convicted of count one and the lesser-

2

included offense of assault on count three. The jury found him not guilty of count two, the simple assault charge. Delgado was sentenced to an enhanced, slightly mitigated prison term of eight years for the aggravated assault and time served for the assault. This appeal followed.

**Discussion**

## I. Constitutionality of A.R.S. § 13-1204(B)(1)

**¶4**      Delgado first argues, as he did below, that A.R.S. § 13-1204(B)(1) is unconstitutionally vague. The constitutionality of a statute is a question of law we review de novo, beginning with a strong presumption the statute is constitutional. *Polanco v. Indus. Comm'n*, 214 Ariz. 489, ¶ 6, 154 P.3d 391, 394 (App. 2007). The defendant has the burden of establishing a statute's constitutional invalidity. *State v. McLamb*, 188 Ariz. 1, 5, 932 P.2d 266, 270 (App. 1996).

**¶5**      A statute is unconstitutionally vague if it does not "'give persons of ordinary intelligence notice of what conduct is prohibited and contain explicit standards of application so as to prevent arbitrary and discriminatory enforcement.'" *State v. McDermott*, 208 Ariz. 332, ¶ 13, 93 P.3d 532, 536 (App. 2004), *quoting State v. Cotton*, 197 Ariz. 584, ¶ 19, 5 P.3d 918, 924 (App. 2000). We are not required to find a law unconstitutionally vague simply because it has not been "'drafted with absolute precision,'" lacks an "'explicit definition,'" or is "'susceptible to different interpretations.'" *State v. Putzi*, 223 Ariz. 578, ¶ 4, 225 P.3d 1154, 1155 (App. 2010), *quoting State v. Zinsmeyer*, 222 Ariz. 612, ¶ 35, 218 P.3d 1069, 1082 (App. 2009), *overruled on other grounds by State v. Bonfiglio*, 231 Ariz. 371, 295 P.3d 948 (2013).

3

¶6        Section 13-1204(B)(1) provides that a person commits aggravated assault by "intentionally or knowingly imped[ing] the normal breathing or circulation of blood of another person by applying pressure to the throat or neck or by obstructing the nose and mouth" in the context of a domestic violence assault. Delgado argues use of the word "normal" in the statute renders it unconstitutionally vague because "'[n]ormal' is a relative term, and no person in Arizona can be expected to know what 'normal' breathing or circulation of blood represents." As some support for his argument, Delgado refers to the testimony of state expert Dr. Ronald Salik, who stated at trial "[i]n medicine, it's always difficult to say what is normal." Delgado maintains that if the state's expert cannot provide one definition of "normal" breathing or circulation, "it cannot be said that anyone of reasonable intelligence could understand what is forbidden" by the statute.

¶7        We agree that "normal" may be used as a relative term that depends on its context. "Normal" means "[c]onforming with, adhering to, or constituting a norm, standard, pattern, level, or type; typical: [e.g.] . . . *one's normal weight*." *The American Heritage Dictionary* 1202 (5th ed. 2011). However, the fact that "normal" may not be the same for all persons does not render the statute unconstitutionally vague. *See Putzi*, 223 Ariz. 578, ¶ 4, 225 P.3d at 1155 (statute not void simply because subject to multiple interpretations). A plain reading of § 13-1204(B)(1) provides adequate notice that a person may not impede another person's normal or typical breathing or circulation of blood. *See State v. Takacs*, 169 Ariz. 392, 395, 819 P.2d 978, 981 (App. 1991) (reviewing court "should give statutes a constitutional construction whenever possible"). As Salik noted during his testimony, "What is normal is for that certain situation." And

4

Delgado provides no support for his contention that a statute is unconstitutionally vague unless each of its terms has a "legally fixed standard" meaning. *See State v. Thompson*, 204 Ariz. 471, ¶ 15, 65 P.3d 420, 424 (2003) (law must provide some legally fixed standards for those enforcing it). To the contrary, whether a statute provides adequate notice of the prohibited conduct turns on its ordinary meaning, not its technical one. *McDermott*, 208 Ariz. 332, ¶ 13, 93 P.3d at 536.

¶8 Delgado has not sustained his burden to establish the statute's unconstitutionality. *McLamb*, 188 Ariz. at 5, 932 P.2d at 270. We see no likelihood that a person of reasonable intelligence would not understand what conduct is prohibited by the statute, and we will not conclude the statute is invalid simply because it might have been written with greater precision. *See Takacs*, 169 Ariz. at 394-95, 819 P.2d at 980-81.

## II. Expert Testimony

¶9 Before trial, Delgado filed a motion to preclude Salik's testimony as a "strangulation expert" pursuant to Rule 702, Ariz. R. Evid. The court denied the motion at a pre-trial hearing, concluding that Salik was qualified to testify based on his medical training and experience. Delgado now challenges that ruling, contending Salik's testimony "did not help the jury determine any issue, . . . w[as] not based on sufficient data," and did not apply "reliable principles or methods." We review a court's denial of a motion to preclude evidence for an abuse of discretion. *See Becerra*, 231 Ariz. 200, ¶ 4, 291 P.3d at 996.

¶10 Rule 702 provides:

5

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

¶11 The Arizona Supreme Court amended Rule 702 on September 8, 2011, effective January 1, 2012, to "adopt[] Federal Rule of Evidence 702, as restyled" and to reflect the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Ariz. R. Evid. 702 cmt.; Ariz. Sup. Ct. Order No. R-10-0035 (Sept. 8, 2011). Therefore, we consider federal court decisions interpreting the federal rule as persuasive authority. *Ariz. State Hosp. v. Klein*, 231 Ariz. 467, ¶ 26, 296 P.3d 1003, 1009 (App. 2013).

¶12 Delgado argues Salik had "no specialized training in strangulation" and suggests his relevant experience was insufficient to qualify him as an expert because it was limited to taking patient histories regarding strangulation when treating trauma injuries. Whether a witness is qualified as an expert is to be construed liberally, and it would be an abuse of discretion "'to exclude testimony simply because . . . the proposed expert does not have the specialization that the court considers most appropriate.'" *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3rd Cir. 1997), *quoting Holbrook*

6

*v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3rd Cir. 1995). If an expert meets the "liberal minimum qualifications," her level of expertise goes to credibility and weight, not admissibility. *Id.*; *see also State v. Davolt*, 207 Ariz. 191, ¶ 70, 84 P.3d 456, 475 (2004) (interpreting former Rule 702, which also required expert have specialized knowledge). As the state correctly noted in its response to Delgado's motion to preclude, Salik's curriculum vitae reflected he was a medical doctor with extensive experience working in emergency medicine and had "expertise on the physical process a body undergoes during strangulation." And at the hearing on Delgado's motion, he conceded that Salik "sees a lot of trauma cases and emergency room issues." *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (medicine not entirely science, also learned profession). The trial court did not err in concluding Salik was qualified as an expert.

¶13　　　　Delgado argues, however, that Salik's testimony was not helpful to the jury because "[a] person does not need to be a doctor to listen to a person's [allegation they have been strangled], which may or may not be true." He notes that expert testimony is not admissible pursuant to Rule 702 if the expert does not rely on any specialized knowledge when forming an opinion and, therefore, "is in no better position" than the jury. *See State v. Sosnowicz*, 229 Ariz. 90, ¶¶ 19-20, 270 P.3d 917, 922-23 (App. 2012).

¶14　　　　In this case, however, Salik's testimony was based on his specialized knowledge as a medical doctor, including his relevant experience treating patients. *See* Ariz. R. Evid. 702 cmt. (amendment not intended to "preclude the testimony of experience-based experts"). The state maintained at the hearing that it sought to elicit testimony from Salik about whether D.H.'s injuries were "consistent with" her story.

7

Delgado contends that Salik's testimony was of "no more use to the jury" than listening to D.H.'s testimony. We disagree. Although a layperson may have the capacity to listen to patient histories, an ordinary juror does not have the same ability to assess injuries and histories as a physician trained in respiratory physiology who has experience treating patients reporting incidents of strangulation.

¶15 Whether or not Salik's patients have accurately reported the cause of their injuries goes to the weight of Salik's testimony, not its admissibility. *See* Ariz. R. Evid. 702 cmt. (amendment did not disturb "traditional jury determinations of credibility and the weight to be afforded" testimony). "Medical professionals reasonably may be expected to rely on self-reported patient histories" even though "it is certainly possible that self-reported histories may be inaccurate." *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). And the possibility of inaccuracies is an issue that may be explored on cross-examination. *See id.* (medical opinion based on patient history was reliable method).

¶16 Delgado also argued at the hearing on his motion that Salik's testimony would invade "the province of the jury" because he would "in essence" be "an expert on [D.H.]'s credibility." Delgado claims that, because Salik acknowledged he could not determine whether someone had been strangled without taking their history, "all [he] could possibly say was that [D.H.] was telling the truth when she said that her injuries were caused by strangulation." To the extent we understand his argument, he appears to be suggesting that because Salik could not conclude someone had been strangled without relying on their statement, he would need to believe D.H.'s account of the events in order

8

to conclude she had been strangled. But as the state clarified at the hearing on the motion to preclude, it did not intend to ask Salik to make a "definitive determination" whether D.H. had been strangled,[1] but simply to state whether her injuries, as depicted in photographs were "consistent with" a person claiming they had been strangled.

¶17 The record supports the trial court's conclusion that Salik was qualified to testify pursuant to Rule 702. Therefore, the court did not err in denying Delgado's motion to preclude. *See Becerra*, 231 Ariz. 200, ¶ 4, 291 P.3d at 996.

### III. Duplicitous Information or Charge

¶18 Delgado additionally argues this court should reverse his convictions because "fundamental error resulted from a duplicitous information and duplicitous charges to the jury." A duplicitous information charges two or more distinct crimes in the same count, *see State v. Klokic*, 219 Ariz. 241, ¶ 10, 196 P.3d 844, 846 (App. 2008), and is "forbidden because it does not provide 'adequate notice of the charge to be defended, . . . present[s] a hazard of a non-unanimous jury verdict, and . . . make[s] a precise pleading of prior jeopardy impossible in the event of a later prosecution.'" *State v. Davis*, 206 Ariz. 377, ¶ 54, 79 P.3d 64, 76 (2003), *quoting State v. Whitney*, 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989). A duplicitous charge occurs "[w]hen the text of an

---

[1]Salik was not required to opine on whether D.H. had been strangled in order for his testimony to be relevant and helpful to the jury. *See Walker*, 208 F.3d at 587 n.2 (nothing requires expert to opine on ultimate issue); *see also Primiano*, 598 F.3d at 565 (medical knowledge often uncertain; testimony need not be conclusive to be useful and reliable); *State v. Lindsey*, 149 Ariz. 472, 474, 720 P.2d 73, 75 (1986) (experts not required to testify to opinion on precise questions before trier of fact).

indictment refers only to one criminal act, but multiple alleged criminal acts are introduced to prove the charge." *Klokic*, 219 Ariz. 241, ¶ 12, 196 P.3d at 847.

¶19 Delgado concedes he did not object below to the information. *See State v. Anderson*, 210 Ariz. 327, ¶ 17, 111 P.3d 369, 378 (2005) (pretrial objection to charging document required); *see also* Ariz. R. Crim. P. 13.5(e). Nor did he object to the jury instruction describing the lesser-included offense of simple assault. But, he asserts the error was fundamental and prejudicial and that we may therefore address this otherwise waived claim within that context. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005). Because a defendant has the right to a unanimous jury verdict in a criminal case, *see* Ariz. Const. art. II, § 23, "[a] violation of that right constitutes fundamental error," *Davis*, 206 Ariz. 377, ¶ 64, 79 P.3d at 77. A defendant establishes prejudice by demonstrating that the jury may have reached a nonunanimous verdict. *See Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607; *State v. Paredes-Solano*, 223 Ariz. 284, ¶ 22, 222 P.3d 900, 907-08 (App. 2009).

### a. Aggravated Assault Conviction

¶20 Delgado argues his due process rights were violated because § 13-1204(B) refers to "all three forms of simple assault as alternatives as the first element of the offense" and the jury was not instructed it had to agree upon which form of assault he had committed. Whether Delgado was entitled to a unanimous verdict on the "form" of simple assault underlying his aggravated conviction depends on how § 13-1204(B) is characterized: "'[T]here is a class of criminal statutes that defines a specific crime and provides ways in which the crime may be committed, and another class that may set forth

10

several distinctive acts and make the commission of each a separate crime, all in one statute.'" *Paredes-Solano*, 223 Ariz. 284, ¶ 9, 222 P.3d at 904, *quoting State v. Dixon*, 127 Ariz. 554, 561, 622 P.2d 501, 508 (App. 1980). Although a jury must find unanimously that the defendant committed a criminal act, a defendant is not entitled to a unanimous verdict on the precise manner in which a crime was committed. *State v. Valentini*, 231 Ariz. 579, ¶ 7, 299 P.3d 751, 753-54 (App. 2013). The question here is whether the legislature intended § 13-1204(B) to describe a single offense that could be committed in more than one way or to create distinct offenses, each constituting aggravated assault. *See id.*

¶21 Section 13-1204(B) provides:

> A person commits aggravated assault if the person commits assault by either intentionally, knowingly or recklessly causing any physical injury to another person, intentionally placing another person in reasonable apprehension of imminent physical injury or knowingly touching another person with the intent to injure the person, and both of the following occur:

> 1. The person intentionally or knowingly impedes the normal breathing or circulation of blood of another person by applying pressure to the throat or neck or by obstructing the nose and mouth either manually or through the use of an instrument.

> 2. [A domestic relationship exists] . . . .

¶22 Delgado argues the first portion of the statute creates separate crimes because it includes language that is nearly identical to the simple assault statute, A.R.S. § 13-1203(A). That statute provides:

> A person commits assault by:

11

1. Intentionally, knowingly or recklessly causing any physical injury to another person; or

2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or

3. Knowingly touching another person with the intent to injure, insult or provoke such person.

Arizona case law has established the three subsections of § 13-1203(A) "are not simply variants of a single, unified offense; they are different crimes." *In re Jeremiah T.*, 212 Ariz. 30, ¶ 12, 126 P.3d 177, 181 (App. 2006); *State v. Sanders*, 205 Ariz. 208, ¶¶ 32-33, 68 P.3d 434, 442 (App. 2003).

¶23 The state argues § 13-1204(B) is more like statutes that have been interpreted to create a single crime. For example, Arizona's first-degree murder, kidnapping, and theft statutes each "describe a single offense despite providing . . . different ways to commit the offense." *Paredes-Solano*, 223 Ariz. 284, ¶ 14, 222 P.3d at 905-06. Those statutes "focus[] on a single harm to the victim," and thereby indicate a legislative intent to create one offense. *Id.* For similar reasons, this court has determined A.R.S. § 13-1417, which prohibits continuous sexual abuse of a child, does not offend due process even though it explicitly provides that jurors need not agree which underlying acts constituted the pattern of abuse. *State v. Ramsey*, 211 Ariz. 529, ¶¶ 16, 26, 124 P.3d 756, 762, 765 (App. 2005). We explained that, although the underlying acts could be charged separately, the specific conduct criminalized by § 13-1417 is "the pattern of sexual assaults . . . rather than each individual act," and the underlying acts are provided merely to help define the prohibited conduct. *Id.* ¶¶ 27-28.

12

¶24     We conclude that § 13-1204(B) creates a single offense. It is distinguishable from statutes like § 13-1203(A), which may be "violated by distinctly different conduct causing different kinds of harm." *Paredes-Solano*, 223 Ariz. 284, ¶ 15, 222 P.3d at 906 (discussing sexual exploitation statute, which created multiple crimes). Like other statutes that have been interpreted to create only one crime, § 13-1204(B) requires proof of a particular harm: that the defendant "impede[d] the normal breathing or circulation of blood of another person." *Id.* ¶ 14. As further evidence of its intent to create a unique offense, the legislature created a separate subsection to prohibit this conduct, rather than adding it to the list of "circumstances" in § 13-1204(A) that may make a simple assault an aggravated assault. *See State v. Diaz*, 224 Ariz. 322, ¶ 10, 230 P.3d 705, 707 (2010) (we examine statutes "in the statutory scheme, which may shed light on . . . proper interpretation"). Therefore, the jury was not required to agree which underlying "form" of assault Delgado had committed, *see Valentini*, 231 Ariz. 579, ¶ 7, 299 P.3d 753-54, and Delgado has failed to prove fundamental error, *see Davis*, 206 Ariz. 377, ¶ 64, 79 P.3d at 77.

### b. Simple Assault Conviction

¶25     Delgado also asks us to reverse his conviction for simple assault. Although the information did not describe the lesser-included offense, Delgado argues the charge was rendered duplicitous because the jury instruction that explained the lesser-included offense did not adequately identify the charged conduct. The state acknowledges "the court and parties evidently did not fully consider the consequences of the jury's . . . deliberating on the lesser included offense of simple assault," and that "the trial court

13

instructed the jury on all three theories of simple assault, each of which *is* a separate offense." *See Sanders*, 205 Ariz. 208, ¶¶ 32-33, 68 P.3d at 442.

**¶26** Nonetheless, because Delgado requested the jury instruction on the lesser-included offense of assault that he now argues constituted reversible error, he has invited any error. *See State v. Logan*, 200 Ariz. 564, ¶ 9, 30 P.3d 631, 632-33 (2001) (we will not find reversible error when complaining party invited error). Therefore, we will not reverse his conviction for simple assault, regardless of whether any fundamental error occurred. *See Anderson*, 210 Ariz. 327, ¶ 20, 111 P.3d at 379.

**Disposition**

**¶27** For the foregoing reasons, Delgado's convictions and sentences are affirmed.

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge