NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

NEIL RYAN MENTE, *Appellant.*

No. 1 CA-CR 15-0649
1 CA-CR 15-0654
1 CA-CR 15-0656
1 CA-CR 16-0077
(Consolidated)
FILED 5-9-2017

---

Appeal from the Superior Court in Maricopa County
No. CR2013-000411-001
CR2006-164038-001
CR 2005-033349-001
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge James P. Beene joined.

**J O H N S E N**, Judge:

**¶1**        Neil Ryan Mente appeals his conviction of taking the identity of another, a Class 4 felony. He argues the superior court erred by instructing the jury in a manner that permitted it to come to a non-unanimous verdict. We affirm the conviction, the resulting revocations of probation and the sentences imposed.[1]

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        In the early morning hours of November 28, 2012, a police officer stopped Mente for speeding.[2] When the officer asked Mente for his driver's license, Mente handed the officer a valid Arizona identification card and admitted that his driver's license was suspended. As a result, the officer returned to his patrol car and prepared to have Mente's vehicle towed. Meanwhile, Mente emptied his pockets and handed the contents to his girlfriend, who was sitting in the front passenger seat of the car. Mente told her to put the items in her purse, and she did so. Soon after, a second officer arrived and began to question Mente's girlfriend. She consented to a search of her purse, where the officer found an Arizona driver's license bearing Mente's photo but a different name and other identifying information.

---

[1]        Mente's appeal from the superior court's ruling denying his motion to vacate his identity-theft conviction is consolidated with his appeals from the judgment of conviction and the revocations of his probation. In Mente's motion to vacate, he argued newly discovered evidence would have changed the verdicts. He also argued his due-process rights were violated by the admission of his statements to police regarding how and when the information on the false license was obtained. Mente's briefs on appeal do not address these issues; therefore, we will not address them.

[2]        On review, we view the evidence and all inferences from it in the light most favorable to upholding the conviction. *State v. Jackson*, 208 Ariz. 56, 57, ¶ 2 (App. 2004).

**¶3** The date on the fictitious license was November 10, 2010, roughly two years before Mente was stopped. Asked by police about the false license, Mente responded that he "had a friend make it several years ago." The officer testified that when he asked Mente where he obtained the information for the license, Mente replied that he "must have obtained it in a burglary several years ago." The officer testified that when he questioned Mente further after his arrest:

> [Mente] told me he had it made several years ago from a friend. He again told me he had planned on using it. Because when I said, "Why are you carrying this around?" He told me he planned on using it to represent a real license so the police wouldn't find out he was suspended.
>
> When I asked him where he obtained it from, he told me it was from a burglary from years ago. But he wasn't positive.

**¶4** Mente was charged with taking the identity of another pursuant to Arizona Revised Statutes ("A.R.S.") section 13-2008 (2017).[3] At trial, over Mente's objection, the court instructed the jury it could convict Mente if it found he "knowingly took, manufactured, recorded, possessed, or used any personal identifying information of another person . . . without the consent of that person . . . with the intent to obtain or use the other person's identity for any unlawful purpose or to cause loss to the person . . . ."

**¶5** Mente was convicted and sentenced to ten years' imprisonment. At the time of the traffic stop, Mente was on probation for two other convictions, one committed in 2005 and the other in 2006. His identity-theft conviction rendered him in violation of his probation on the two earlier crimes. The court revoked his probation on the two earlier offenses and sentenced him to concurrent sentences of 2.5 years and five years, to be served consecutively to the ten-year term it imposed for identity theft.

**¶6** Mente timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2017), 13-4031 (2017) and -4033(A)(1) (2017).

---

[3] Absent material revision after the date of an alleged offense, we cite a statute's current version.

## DISCUSSION

¶7        Mente argues the jury instruction setting out the elements of the charge against him created a duplicitous charge, allowing the jury to convict him "for crimes committed years prior to the charged date."

¶8        When an indictment charges just one crime, but the State presents evidence of more than one alleged criminal act to prove that crime, the charge is duplicitous. *See State v. Klokic*, 219 Ariz. 241, 243-44, ¶¶ 11-12 (App. 2008).  On the other hand, a duplicitous indictment charges two or more distinct offenses in a single count.  *State v. Paredes-Solano*, 223 Ariz. 284, 287, ¶ 4 (App. 2009).  The problem with both varieties of error is the possibility of a non-unanimous verdict.  *Id.* at 288, ¶ 8; *Klokic*, 219 Ariz. at 244, ¶ 12.

¶9        To the extent Mente argues that a non-unanimous jury may have convicted him variously of taking, manufacturing, recording, possessing or using the other person's personal information, on this record, we agree with the State that his argument concerns a duplicitous indictment, not a duplicitous charge.  The failure to object to a duplicitous indictment before trial waives all but fundamental error review.  *Paredes-Solano*, 223 Ariz. at 288, ¶ 8; *see State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).

¶10       Mente argues that he did not have to object before trial because he "reasonably believed that the State was limited to proving one crime for which all elements occurred on or about" the date of his 2012 traffic stop.  But the jury instruction he complains of almost exactly mirrored the indictment, which alleged that "on or about the 28th day of November, 2012, [Mente] knowingly took, purchased, manufactured, recorded, possessed or used" the victim's personal identifying information.  Because the asserted duplicitousness was found in the indictment, Mente was required to object before trial.  *Paredes-Solano*, 223 Ariz. at 288, ¶ 8.  Because he did not, to prevail on appeal, Mente "must establish both that fundamental error exists and that the error in his case caused him prejudice."  *Henderson*, 210 Ariz. at 567, ¶ 20.  Fundamental error is error that "goes to the foundation of his case, takes away a right that is essential to [the] defense, and is of such magnitude that [the defendant] could not have received a fair trial."  *Id.* at 568, ¶ 24.

¶11       The State argues that no fundamental error occurred because identity theft under A.R.S. § 13-2008(A) is a unitary offense such that a defendant is not entitled to a unanimous jury verdict "on the manner in

which he committed the offense[.]" We need not decide that issue because Mente cannot demonstrate prejudice from any asserted error, fundamental or otherwise.

¶12            At trial, Mente did not dispute that he possessed the victim's personal identification without the victim's consent; the only issue for the jury was whether the State had proved Mente's intent "to obtain or use the other person's . . . identity for any unlawful purpose," as prohibited by § 13-2008(A).

¶13            Citing Mente's explanation to police for why he carried the fictitious license (to avoid being cited for driving with a suspended license), the prosecutor argued in closing that there could be no lawful purpose for carrying a false license. Beyond that, in the absence of any evidence that Mente actually used the fictitious license, the prosecutor also told the jury it could find Mente had the required criminal intent on the day of the traffic stop based on his admissions to police that he "had [the license] made" and that he had obtained it unlawfully, and that when stopped, he tried to hide the license by giving it to his girlfriend.

¶14            Contrary to Mente's argument, the State did not ask the jury to find he committed a crime by taking, manufacturing, recording, possessing or using the fictitious license or the victim's identifying information on any date before the traffic stop.[4] As the prosecutor said in his final closing:

> And his intent can be inferred from all of the facts and circumstances, such as how he obtained it. I already talked about, you know, creating the ID, you know, keeping it with you. Even though you had this other ID, you know, you have the option. You want to be able to pick and choose, and then

---

[4]            Beyond recounting Mente's brief mention of a burglary to police, the State did not offer evidence of a burglary, nor did the prosecutor reference any particular theft. By contrast, during his opening statement, defense counsel told the jury to expect the victim of the identity theft "to tell you that the information was stolen from his son's vehicle about eight years ago." The only testimony to that effect, however, came during the defense cross-examination of one of the police officers, whom the defense asked to elaborate on the conversation in which the officer alerted the victim to the discovery of the fictitious license.

when you're busted, you hide it and you lie about it. And you even told the officers your intent, just in case you needed it.

\*      \*      \*

So, in just concluding, this defendant, like I've said from the beginning, he stole someone's personal identifying information, used it to create a fictitious driver's license, carried it around with him, ready to use it when it was advantageous. Hid it, lied about it. You can infer intent.

¶15        In his reply brief, Mente argues the court erred by allowing the State to try to prove intent with evidence of "irrelevant and prejudicial areas that were not temporally or factually related to the question of whether or not he possessed the license with 'unlawful intent'" on the day of the traffic stop. He asserts "allegations about theft and burglary and manufacturing and recording" made it "impossible to know which criminal act the individual jurors concluded" he committed. The superior court, however, did not err in denying Mente's motion *in limine* pursuant to Arizona Rules of Evidence 403 and 404 to preclude his statements to police that the victim's information had been taken in a prior burglary. As the court ruled, that evidence was admissible to demonstrate Mente's criminal intent at the time he was stopped with the license in his possession.

¶16        In short, at trial the State offered no evidence of any prior illegal acts beyond Mente's own explanation for how he came into possession of the victim's personal information. Moreover, contrary to Mente's argument, the jury was not asked to find him guilty of committing identity theft on any date other than the day of the traffic stop; the only use the State made of Mente's own admissions about prior events was to demonstrate his unlawful intent on the date of the stop.

**CONCLUSION**

**¶17** For the reasons stated, we affirm Mente's conviction, the resulting revocations of his probation and the resulting sentences.

