IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

STATE OF ARIZONA, *Appellee,*

*v.*

SEAN DAVID RIX, *Appellant.*

No. 1 CA-CR 22-0305
FILED 8-29-2023

_____

Appeal from the Superior Court in Mohave County
No. S8015CR201901104
The Honorable Richard D. Lambert, Judge

**REVERSED AND REMANDED**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew S. Reilly
*Counsel for Appellee*

Curry, Pearson, & Wooten PLC, Phoenix
By Kristen M. Curry
*Counsel for Appellant*

_____

**OPINION**

Judge Andrew M. Jacobs delivered the opinion of the Court, in which Chief
Judge David B. Gass and Judge Brian Y. Furuya joined.

_____

**J A C O B S**, Judge:

¶1          Sean David Rix appeals his convictions and sentences for two counts of attempted sexual exploitation of a minor.  Rix raises four issues on appeal, claiming the superior court committed reversible error by:  (1) admitting other-act evidence under Arizona Rule of Evidence ("Rule") 404(c); (2) denying his motion to dismiss based on an alleged double jeopardy violation; (3) providing the "exploitive exhibition" jury instruction; and (4) providing the undercover persona jury instruction.  Although we reject the final three arguments, we find the court's admission of unfairly prejudicial other-act evidence requires reversal, and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

### A.    A Detective Posing as a Thirteen-Year-Old Girl Contacts Rix Within a Sting Operation.

¶2          In the spring of 2019, a detective with the Mohave County Sheriff's Office ("MCSO") conducted an undercover investigation targeting individuals who use the internet to sexually exploit children.  As part of the investigation, the detective created an undercover online persona for a thirteen-year-old girl.  The detective used "non-sexual" images provided by a female MCSO employee, taken when she was thirteen years old.

¶3          The detective found an advertisement on a "personals" website frequented by individuals seeking romantic or sexual relationships. The title of the advertisement read, "I want to photograph your vagina."  It then stated, "I'm a professional photographer, and I'm seeking unique pussies to photograph.  I will make it worth your while, and you will not be disappointed.  Serious inquiries only."  The detective responded to the advertisement, and exchanged messages with an individual using the pseudonym "Bob Bobbers."  Detectives would later identify Rix as "Bobbers" through his account information, service provider records, and internet protocol address.

¶4          On April 10 and 11, the detective asked if Rix was "still looking" and if he liked "younger girls."[1]  Rix replied, "Yeah, I do."  The detective wrote to Rix, "I'm 13.  If you don't care, then I don't."  Rix responded by asking for an image of the girl, and the detective sent an image of the undercover persona.  Rix wrote back, "Show me your pussy."

---

[1]          We recite the exchanges without their typographical errors.

The detective declined to send any further images, asking Rix to send an image of himself. Rix replied, "I will after you show me you're serious." The detective asked Rix to communicate via text message, providing him with a phone number used for undercover investigations. Rix responded, "After you send me a pussy pic." When the detective declined a second time, Rix ended their communication.

¶5        Over a month later, on May 15 and 16, Rix reached out to the undercover persona, claiming that the two "used to hook up" and he once took her to the hospital. When the detective (writing as the persona) responded that the girl had never been to a hospital, Rix stated, "So I know I have the right person, you are a female, right?" The detective answered in the affirmative and stated, "I'm 13. So if you're not cool with that, then bye." Rix responded, "I'm definitely cool with that," asking to see her "sexy ass" and stating that he wanted to "meet up." Rix indicated that he lived out-of-state but frequently traveled to Arizona. Rix requested an image of the girl, and the detective sent another image of the undercover persona. Rix then asked, "You like sucking dick?" Responding in the persona, the detective wrote that she had only done so once, to which Rix responded, "Show me your tiny teen pussy." When the detective refused to send this image, Rix ended the conversation.

### B.        The State Searched Rix's Devices and Found a Large Number of Sexually Exploitive Images.

¶6        After linking Rix to the advertisement, detectives obtained and executed a search warrant on his home in Nevada and seized several electronic devices. A search of these devices revealed over 3,000 sexually exploitive images and videos of children. The search also confirmed that Rix accessed some of the material days before his arrest, owned the devices, and visited the website used to post the advertisement. Rix claimed he created the advertisement based on his interest in "erotic photography" and only meant to communicate with adult females. Acknowledging his exchanges with the undercover persona, Rix maintained that he believed her to be an adult female or someone "goofing" around with him. Although Rix denied knowingly possessing sexually exploitive material, he admitted the seized devices belonged to him.

**C.** **Rix Stands Trial for Two Counts of Attempted Sexual Exploitation of a Minor, and the State Seeks to Introduce Thousands of Sexually Exploitive Images to Prove His Aberrant Sexual Propensity to Commit the Charged Crimes.**

**¶7** The State charged Rix with two counts of attempted sexual exploitation of a minor, class 3 felonies and dangerous crimes against children (Counts One and Two). *See* A.R.S. §§ 13-1001(A)(1), (C)(2), -3553(A)(2). These charges stem from Rix's conversations with the undercover persona in April and May 2019. Authorities in Nevada charged Rix in a separate case for the sexually exploitive material located on his devices.

**¶8** Before trial, the State moved to admit evidence Rix possessed sexually exploitive material under Rule 404(c). Rix opposed the motion and argued that the other-act evidence the State sought to admit was too dissimilar to the charged crimes and the risk of unfair prejudice far outweighed its minimal probative value. In a two-day evidentiary hearing, a Nevada detective testified they: (1) executed a search warrant based on the investigation of the charged crimes; (2) seized and forensically examined four electronic devices with "ownership" material linking Rix to the devices; (3) located over 3,000 sexually exploitive images and videos of children; and (4) learned the items were downloaded between 2017 and 2019. The State expressed an intent to admit all 3,000 items, show a limited number in open court, and allow jurors to view the items upon request. Rix opposed any reference to the sexually exploitive material, arguing that charges relating to possession were still pending in a different jurisdiction, the material would be unfairly prejudicial, and the images were too dissimilar from the charged crimes. At the court's suggestion, the State agreed to reduce the number of images it would seek to admit and remove any duplicates.

**D.** **The Superior Court Allowed the State to Use 50 of the Images at Trial, Most of Which Were Images That Varied Greatly From Those Rix Sought in the Charged Conduct.**

**¶9** Applying Rule 404(c), the superior court found: (1) sufficient proof Rix knowingly possessed sexually exploitive material; (2) his possession of the material provided a reasonable basis to infer he had a character trait giving rise to an aberrant sexual propensity to commit the charged crimes; and (3) the evidentiary value of the evidence was not substantially outweighed by the danger of unfair prejudice. Making this determination, the court considered evidence Rix possessed the material at

the time of his arrest in the current case, found the items "similar in that they portray underage girls' genitalia or portray them in sexual acts," and the nature and large quantity showed he "collects images of underaged girls, again in sexual depictions or photos of their genitalia." The court limited the State to admitting no more than 50 of the images, without otherwise limiting the State's use of the evidence at trial.

¶10 At trial, the State elicited testimony from multiple witnesses that Rix had sexually exploitive material on his devices at the time of his arrest, with one witness testifying that they found "over 3,000 images of child sexual abuse material." This testimony included descriptions of an image and video depicting a female child of "about 10 years old performing oral sex on a dog."

¶11 The State offered, and the court admitted into evidence, a thumb drive containing 23 sexually exploitive images: (1) fourteen images depicting sexual conduct with children, including images involving a toddler-aged female child, group sex, and oral and anal sexual contact; (2) one image of a female child engaging in oral sexual contact with a dog; (3) six images of female children engaged in "exploitive exhibition"; and (4) one image of a female child's breasts and one of a female child wearing an "I ♥ CP" shirt[2]. At least fourteen of the images were of children the State's witness described as "prepubescent" or who were clearly so. As the State showed the images to the jury, a detective provided verbal descriptions of all except two of the images. The detective referred to the images as "examples" of the material located on Rix's devices.

¶12 After the State rested, Rix elected to testify. Rix testified consistent with his statements to detectives, claiming he believed the undercover persona to be an adult or someone playing a joke on him. He denied knowingly possessing the sexually exploitive images. Throughout cross-examination, the State showed Rix the images and again displayed them to the jury at length, confirming that they depicted children. Following Rix's testimony, jurors submitted questions about the images, asking (1) "How can this many images be on your personal computer without your knowledge?" and (2) "Why do you have photos of naked young girls on your electronics? How did they get there?" The superior court did not ask Rix these questions.

---

[2] CP in the context of this image is taken to mean child pornography.

**E.**     **The Superior Court Rejected Rix's Arguments That *State v. Moninger* Barred Sentencing Him for What He Claimed Was One Course of Conduct, and That Double Jeopardy Barred His Prosecution.**

**¶13**          At the close of the State's case-in-chief, Rix moved to dismiss Count Two based on *State v. Moninger*, 251 Ariz. 487 (App. 2021).  Rix argued that multiple convictions and sentences for a single "continued" series of conversations with the undercover persona violated the proscription against double jeopardy.  The superior court denied the motion, finding the month-long gap between Rix's communications with the undercover persona created two distinct offenses.  The court thus found *Moninger* did not apply.  Rix re-urged this argument after trial, contending that he could not receive consecutive sentences for one ongoing course of conduct.  The court concluded that the counts represented two distinct offenses and could be punished separately.

**¶14**          After the parties rested, the superior court instructed the jury as to the elements of attempt, then informed them that "[t]he crime of sexual exploitation of a minor requires proof that the defendant knowingly possessed any visual depiction in which a minor was engaged in exploitive exhibition or other sexual conduct.  It is not a defense to prosecution that the other person was an adult posing as a minor."  The court defined "exploitive exhibition" as "the actual or simulated exhibition of the genitals or pubic or rectal areas of any person for the purpose of sexual stimulation of the viewer."  Though Rix objected to the use of the word "simulated" in the definition of "exploitive exhibition," he did not object to the phrase "rectal areas" or argue that it could lead to juror confusion.  The court provided a limiting instruction for the other-act evidence, and an instruction that the jury must reach unanimous verdicts and "decide each count separately on the evidence with the law applicable to it."

**¶15**          In closing argument, the State discussed the sexually exploitive material, noting that the thumb drive contained "just a sampling of images" located on Rix's devices.  The State argued that Rix committed the charged offenses in an effort "to increase his collection of child sex abuse material."  The State went on to argue that Counts One and Two were based on evidence Rix "attempted to receive photos of a 13-year-old's genitalia on two occasions."  Rix countered in his closing that the State failed to prove he knowingly possessed sexually exploitive material, criticizing the investigation and warning the jury not to be confused by the State's focus on other-act evidence.  Rix also argued that he only intended

to communicate with adult females, and never believed the undercover persona to be underage.

¶16 The jury found Rix guilty as charged. The superior court imposed the minimum term of five years' imprisonment for Count One, to be followed by a term of lifetime probation for Count Two. Rix timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**A.** **The Superior Court's Admission of Copious Other-Act Evidence, Consisting Mostly of Highly Inflammatory Images Removed From and Significantly More Disturbing and Graphic Than Those Rix Sought From the Undercover Officer, Was Error.**

¶17 Rix first contends that the superior court abused its discretion by admitting sexually exploitive other-act images under Rule 404(c). We review the admission of such evidence for an abuse of discretion, *State v. Garcia*, 200 Ariz. 471, 475, ¶ 25 (App. 2001), and will reverse the court's ruling only upon a finding of clear prejudice, *State v. Ayala*, 178 Ariz. 385, 387 (App. 1994). We rarely find the clear prejudice required to reverse under Rule 404(c).[3] This, however, is the outlier case. The State swamped

---

[3] *See, e.g., State v. Severin*, 2 CA-CR 2022-0045, 2023 WL 2206545, at *2, 4–5, ¶¶ 7, 19–24 (Ariz. App. Feb. 24, 2023) (mem. decision) (affirming admission of other-act testimony that the defendant pleaded guilty to receiving child pornography where the charged items were "substantially similar"); *State v. Andrews*, 2 CA-CR 2019-0192, 2020 WL 5754480, at *2–3, ¶¶ 7–12 (Ariz. App. Sept. 25, 2020) (mem. decision) (affirming cross-admissibility of other-act testimony where the jury only heard written descriptions of the sexually exploitive videos, reducing the prejudicial impact); *State v. Hoyle*, 1 CA-CR 18-0109, 2018 WL 5269795, at *2–3, ¶¶ 10–16 (Ariz. App. Oct. 22, 2018) (mem. decision) (affirming the admission of limited other-act testimony that thousands of "similar but uncharged images" were found on the defendant's devices to prove he knowingly possessed the charged images, and "no unduly prejudicial specifics were admitted"); *State v. Vitasek*, 1 CA-CR 12-0050, 2017 WL 525963, at *5, ¶¶ 25–28 (Ariz. App. Feb. 9, 2017) (mem. decision) (affirming the admission of other-act testimony regarding uncharged sexual contact with charged victims and other children, where the superior court properly precluded

the jury with such a quantity of shocking and disturbing material that was meaningfully removed in content from the offensive material Rix sought from the undercover persona that clear prejudice occurred, requiring reversal.

¶18　　　　Generally, Rule 404(b) prohibits the admission of "other crimes, wrongs, or acts" "to prove the character of a person in order to show action in conformity therewith."　Ariz. R. Evid. 404(b)(1).　An exception to this general rule, Rule 404(c) allows the admission of other-act evidence "if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged."　Ariz. R. Evid. 404(c).　Before admitting evidence under Rule 404(c), the court must find the following:

> (A) The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.
>
> (B) The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.
>
> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403.

Ariz. R. Evid. 404(c)(1)(A)–(C).　As we discuss below, it is the "unfair prejudice" component of Rule 404(c)(1)(C), which echoes Rule 403, that we address here.

¶19　　　　When determining under Rule 404(c)(1)(C) whether the probative value of proffered evidence is substantially outweighed by the danger of unfair prejudice from its admission, the court must also consider, among other relevant factors, the similarities or dissimilarities between the other act and the charged crime.　Ariz. R. Evid. 404(c)(1)(C)(i)–(viii).　An other-act case predating the enactment of Rule 404(c) provides sound

---

information regarding bestiality that appeared unreliable).　*But see State v. Lane*, 2 CA-CR 2008-0283, 2009 WL 2480730, at *3-5, ¶¶ 8–14 (Ariz. App. Aug. 13, 2009) (mem. decision) (finding abuse of discretion where other-act testimony involved uncharged sexual acts involving a "hot dog and bestiality" that were "vastly dissimilar" and "were more outrageous than the acts alleged" in the case).

guidance here, explaining that while an "exact replication" of the charged offense is not required, to be admitted, the other act must be similar to the charged crime. *State v. Lopez*, 170 Ariz. 112, 117 (App. 1991). Thus, in *Lopez*, the parallels between the other-act evidence and the charged crime were striking:

> In this case, the similarities between the uncharged and the charged acts were numerous: in each of the uncharged acts, defendant made sexual advances to an adolescent male between the ages of 14 and 16; in each of the cases, defendant made promises to procure a woman or girl to have sex with the boy; in each case the victim had been offered or had actually obtained employment with defendant. Finally, two of the other boys suffered a sexual assault while under defendant's supervision. These similarities were sufficient to allow the evidence at trial.

*Id.* Evidence need not be as closely similar to the charged acts as was true in *Lopez* to be admitted, but *Lopez* sets out a useful benchmark by providing one example of similarity sufficient to justify the admission of other-act evidence.

¶20        This other-act analysis is informed by Rule 403. *See* Comment, Ariz. R. Evid. 404 ("Subsection (1)(C) of the rule requires the court to make a Rule 403 analysis in all cases.") Although the superior court has broad discretion in admitting relevant evidence, the court must weigh the danger of unfair prejudice from the evidence against its probative value. *State v. Bocharski*, 200 Ariz. 50, 56, ¶ 27 (2001). Put another way, Rule 403 teaches that relevancy is a necessary but not sufficient condition to admit evidence. *See State v. Chapple*, 135 Ariz. 281, 288 (1983). Under it, the court should exclude even relevant evidence if it "has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Mott*, 187 Ariz. 536, 545 (1997). Thus, in a case predating Rule 403 but applying its concepts, it was error to admit particularly gruesome or inflammatory images, which, taken together with the State's "inflammatory rhetoric in [the] closing argument, may have inflamed the jury into acting out of passion rather than logic." *State v. Beers*, 8 Ariz. App. 534, 540 (1968) (finding reversible error where the admitted images depicted "the nude, bruised body of the deceased, without sufficient evidence to connect the bruises to the death of the child").

¶21        In *State v. Salazar*, we considered whether the superior court abused its discretion in admitting detailed testimony from victims of three

uncharged sexual assaults as other-act evidence. 181 Ariz. 87, 88–89 (App. 1994). The charged crime involved attempted molestation of a child, committed against one victim. *Id*. at 88. Looking to the history of other-act or sexual propensity evidence, we acknowledged its exceptional nature as an avenue to prove character, and resulting efforts to narrowly define when it may be used. *Id*. at 90 (citing *State v. McFarlin*, 110 Ariz. 225, 228 (1973)). We noted that "Arizona courts have recognized in other contexts the value of eliminating irrelevant or inflammatory detail and limiting evidence to its probative core." *Id*. at 92. Though the evidence in *Salazar* was relevant to the charged crime, we found that the court erred by considering admission of the other-act evidence "as an all-or-nothing proposition without considering appropriate restraints." *Id*. We recognized that, given the nature of sexually aberrant acts, they run the risk of being "so highly prejudicial as to be 'nearly dispositive, making the guilty verdict almost a formality.'" *Id*. at 93 (quoting *State v. Treadaway*, 116 Ariz. 163, 167 (1977)). As a result, the admission of extensive other-act testimony, with no limit on "extraneous and unduly prejudicial" facts, allowed the State to "luxuriate in inflammatory detail" and resulted in reversible error. *Id*. at 92–93.

**¶22** In reaching the decision in *Salazar*, we pointed to other jurisdictions and their handling of "unnecessarily inflammatory" sexual propensity evidence. *Id*. at 92. We noted that, in *United States v. Harvey*, 991 F.2d 981 (2d Cir. 1993), a circuit court reversed a conviction for the knowing receipt of child pornography because the superior court admitted "detailed evidence that defendant possessed other videotapes depicting people engaged in bestiality, sadomasochism, and acts involving human waste." *Id*. In *Harvey*, the circuit court found that the videotapes "did not bear on the disputed trial issues" and had been offered "to create disgust and antagonism" for the defendant. 991 F.2d at 996. The circuit court concluded that the jury would not have convicted the defendant "in the absence of the prejudicial evidence gratuitously presented by the prosecutor." *Id*. at 997. Using *Harvey* for guidance, we came to a similar conclusion in *Salazar*, finding reversible error based on the admission of unbridled, highly prejudicial sexual propensity evidence. 181 Ariz. at 92–93. We noted that the key, and often overlooked, inquiry is "whether the evidence can be narrowed or limited to protect both parties by minimizing its potential for unfair prejudice while preserving its probative value." *Id*. at 92. Although Rule 403 generally favors admissibility, rules concerning other-act or sexual propensity evidence "have a different thrust, and the suppositional balance no longer tilts toward admission." *Id*. at 91.

**¶23** *State v. Coghill* is likewise instructive. 216 Ariz. 578 (App. 2007). There, the superior court admitted evidence that the defendant

possessed adult pornography in a trial concerning sexual exploitation of a minor. *Id*. at 582, ¶¶ 11–12. Noting that evidence the defendant regularly downloaded material from the internet showed his willingness and ability to do so in committing the charged crimes, the fact that some of the material contained adult pornography "had no special relevance to show knowledge, opportunity, or intent." *Id*. at 583–84, ¶¶ 16–18, 27. Finding the court committed reversible error in failing to adequately minimize the risk of unfair prejudice, we stressed the importance of "removing unnecessary inflammatory detail from other-act evidence before admitting it." *Id*. at 583, 586, ¶¶ 17–19, 33. Our decision in this case aligns with the holdings in *Salazar* and *Coghill*.

¶24        The first subpart of Rule 404(c)(1) asks a straightforward question the superior court correctly resolved — whether the evidence is sufficient to allow the trier of fact to conclude that Rix committed the other act — owning the sexually exploitive, other-act images. *See* Ariz. R. Evid. 404(c)(1)(A). The court correctly found that the State presented sufficient proof Rix knowingly possessed sexually exploitive material at the time of his arrest. *See* A.R.S. §§ 13-3551 (defining terms applicable to sexual exploitation offenses), -3553(A)(2) (statutory elements of sexual exploitation of a minor). Detectives found ownership material linking Rix to the electronic devices containing the images at issue, and by his own admission, they belonged to him. A forensic examination of the devices showed Rix collected and had recently accessed the sexually exploitive material, which depicted children under the age of fifteen. This was sufficient proof Rix committed the other acts. *See* Ariz. R. Evid. 404(c)(1)(A); *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 30 (2004) (recognizing the clear and convincing evidence standard of proof for other-act evidence).

¶25        The second subpart of Rule 404(c)(1) asks a different question — whether the commission of the other act provides a reasonable basis to infer that Rix had a character trait "giving rise to an aberrant sexual propensity to commit the crime charged." Ariz. R. Evid. 404(c)(1)(B). Again, Rix has shown no error in the superior court's resolution of this question. In determining the second element, "the question is not whether the other act *per se* involves abnormal or aberrant conduct," but whether the evidence creates "a reasonable inference that the defendant had a character trait that gives rise to an aberrant sexual propensity to commit the charged sexual offense." *Aguilar*, 209 Ariz. at 48, ¶ 27 (citing Ariz. R. Evid. 404(c)(1)(B)). It is therefore important to consider the similarity of the other act to the charged crime. *Id*. The charged crimes involved Rix's attempt to receive two images of a thirteen-year-old girl's genitalia, both of which would constitute "[e]xploitive exhibition," A.R.S. § 13-3551(5). The State

elicited testimony that Rix possessed thousands of sexually exploitive images and videos, admitting 23 images as "examples" of his collection. Within the large number of examples the State introduced were a number of images of the exploitive exhibition of the genitalia of underage females. While telling the jury of the existence of these images would have "provide[d] a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged," showing the jury the images likewise reinforced that inference. For that reason, we agree with the superior court's conclusion that Rule 404(c)(1)(B) supported the admission of those images of exploitive exhibition.

¶26        We find an abuse of discretion, however, in the superior court's resolution of the third question posed by Rule 404(c)(1)—whether "[t]he evidentiary value of proof of the other act is . . . substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403." *See* Ariz. R. Evid. 404(c)(1)(C). The evidentiary value of the proof of Rix's other acts — here, his possession of other sexually exploitive images of children mostly far younger than thirteen and mostly performing sexual acts, thus taking them far beyond the images of exploitive exhibition Rix sought — was far outweighed by the danger of unfair prejudice.

¶27        Fifteen of the twenty-three images the State presented to the jury depicted far more than what Rix sought. These very disturbing images depict group sex, oral and anal sexual contact, and bestiality, in the form of a young child fellating a dog. Most of the images were of "prepubescent" subjects, even though Rix was charged with seeking two exploitive images of a pubescent child. Two of the images even depicted adult male hands manipulating the genitalia of a toddler. In deciding whether the prejudice from these images substantially outweighed their probative value, the court was required by Rule 404(c)(1)(C) to consider the "remoteness of the other act" — here, the very different types of images — and also the "similarity or dissimilarity of the other act," both comparative inquiries. *See* Ariz. R. Evid. 404(c)(1)(C)(i), (ii). These fifteen images are highly dissimilar to those Rix was charged with seeking. They were extremely prejudicial, and far less probative than the eight images of exploitive exhibition the State displayed at trial that substantially corresponded to those Rix sought.

¶28        We are not suggesting that the State cannot or should not show the jury representative examples of child pornography in a case such as Rix's. Had the evidence been limited to the State to describing the nature and amount of Rix's sexually exploitive material, with the court only

admitting representative images depicting content similar to that which Rix requested from the undercover persona, the other-act evidence would certainly have been acceptably probative, even in relation to the high degree of prejudice to Rix inherent in such content.

¶29 But that is not what happened. In a clear appeal to the disgust they would inevitably arouse, the jury was subjected to extremely disturbing images of very young girls subjected to anal sex, graphic group sex, bestiality, and other sexual conduct, with the State's witness narrating the horrific images to the jury, describing most of the victims in the images as either "prepubescent" or potentially "a toddler." As in *Salazar*, the State's presentation lingered on and accentuated highly inflammatory details, "creat[ing] overwhelming prejudice against the defendant." *See* 181 Ariz. at 92 (finding prejudicial error where prosecution "luxuriate[d] in inflammatory detail"). The degree of dissimilarity and logical remoteness of these other images from what Rix was charged with seeking was so great that the prejudice from the parade of vile images swamped their probative value. This is especially so given our counsel in *Salazar* concerning "the value of eliminating irrelevant or inflammatory detail and limiting evidence to its probative core." *Id.* at 92.

¶30 Nothing in the briefing or the record cures this problem. The State does not argue harmless error. *See State v. Bible*, 175 Ariz. 549, 588 (1993) ("The State has the burden of convincing us that error is harmless. . . ."). To the extent the superior court instructed the jury on the proper use of other-act evidence, we cannot say the instructions mitigated the unfairly prejudicial, voluminous nature of the other-act evidence in this case. *See State v. Terrazas*, 189 Ariz. 580, 584 (1997) (observing other-act evidence could influence a jury's decision despite a cautionary instruction).

¶31 Our conclusion that admitting a large number of other-act images that are significantly different from, and even more disturbing than, those the defendant was charged with seeking subverts the jury's decisionmaking process accords not only with Rule 404(c)(1)(C) but also the decisions of other jurisdictions. *See, e.g., Minch v. Commonwealth*, 630 S.W.3d 660, 666–69 (Ky. 2021) (finding reversible error based on the prejudicial impact of admitting 40 uncharged sexually exploitive images, noting that "[c]ases involving child pornography and sexual abuse of children are highly emotional and capable of inflaming the jury. So the superior court's role as a gatekeeper monitoring the admission of unduly prejudicial evidence is of utmost importance"); *People v. Falsetta*, 21 Cal. 4th 903, 916–20 (1999) (requiring the trial court to conduct a "careful weighing process" in admitting other-act or sexual propensity evidence and consider "the

availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense").

**¶32** Separate and independent from our analysis of the admission of the materials under Rule 404(c)(1)(C), we caution all in our legal system who must work with sexually exploitive material about the potential for revictimization in the unnecessary display of these images. Sexually exploitive material "not only harms children in its production, but also 'causes the child victims continuing harm by haunting the children in years to come.'" *State v. Berger*, 212 Ariz. 473, 477, ¶ 18 (2006) (quoting *Osborne v. Ohio*, 495 U.S. 103, 111 (1990)); *see also Improving the Response to Victims of Child Pornography*, The National Center for Victims of Crime (Dec. 19, 2014), https://victimsofcrime.org/doc/Policy/improving-response-to-vcp_full-report.pdf?sfvrsn=2 (noting that, "unlike other victims of sexual abuse, for whom the abuse is usually completely in the past, victims depicted in child pornography can suffer ongoing, daily experiences of victimization"). We thus remind all participants in our justice system that excessive use of these images subjects both victims and jurors to unnecessary harm.

### B.    The Superior Court Properly Denied Rix's Motion to Dismiss Count Two.

**¶33** Rix next claims the superior court abused its discretion by denying his motion to dismiss Count Two as multiplicitous, subjecting him to double jeopardy. We review double jeopardy claims and issues of statutory interpretation *de novo*. *State v. Powers*, 200 Ariz. 123, 125–26, ¶¶ 5, 8 (App. 2001).

**¶34** Multiplicity occurs when a defendant is charged with a single offense in multiple counts, raising "the potential for multiple punishments, which implicates double jeopardy." *Id.* at 125, ¶ 5. The statutory definition of an offense "determines the scope of conduct for which a discrete charge can be brought, which the United States Supreme Court has referred to as the allowable unit of prosecution." *State v. Jurden*, 239 Ariz. 526, 529, ¶ 11 (2016) (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952)). When multiple convictions stem from violations of the same statute, we must determine whether the convictions are based on separate and distinct acts. *Blockburger v. United States*, 284 U.S. 299, 301–03 (1932). If so, the separate and distinct acts may be punished separately. *Id.*

¶35 Relying on *Moninger*, Rix argues Counts One and Two constituted one course of conduct, resulting in only one violation of the sexual exploitation of a minor statute. *See* A.R.S. § 13-3553(A)(2). In *Moninger*, the State charged the defendant with multiple counts of luring a minor for sexual exploitation under A.R.S. § 13-3554(A) based on a series of conversations with an undercover persona over the course of several days, each involving the defendant's solicitation for sexual intercourse. 251 Ariz. at 489–90, ¶¶ 3–4. Interpreting the "language and context" of the statute, along with "its history, purpose, and effects, we conclude[d] [that] the use of 'solicit' in A.R.S. § 13-3554(A) refers to a course of conduct, meaning a statement or series of statements requesting sexual conduct." *Id*. at 492, ¶ 14. We reasoned that the crux of "the issue is not whether [the defendant] discussed sexual conduct on each date alleged in the indictment but whether those solicitous acts comprised a single course of conduct or several." *Id*. at 499, ¶ 44. Because all the conversations referred to the "same sexual encounter" with the undercover persona, we concluded that the defendant engaged in a single course of conduct and could only be charged with one luring offense. *Id*. at 498–99, ¶¶ 41, 45.

¶36 Here, the State charged Rix with two counts of attempted sexual exploitation of a minor, based on separate requests for images of the undercover persona's genitalia in April and May 2019. In pertinent part, "[a] person commits attempt if, acting with the kind of culpability otherwise required," that person "[i]ntentionally engages in conduct which would constitute an offense if the attendant circumstances were as such person believes them to be . . . ." A.R.S. § 13-1001(A)(1). Under A.R.S. § 13-3553(A)(2), "[a] person commits sexual exploitation of a minor" if he receives or possesses "any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct." Our courts have recognized the legislature's intent to criminalize each sexually exploitive "visual depiction" or image to deter the production of such material and the continuing harm suffered by the victims depicted. *Berger*, 212 Ariz. at 473–74, 477–78, ¶¶ 2–3, 19–23 (2006); *State v. McPherson*, 228 Ariz. 557, 560, ¶ 6 (App. 2012). Thus, double jeopardy does not bar separate charges and punishments for multiple images, even if identical. *State v. Valdez*, 182 Ariz. 165, 170–71 (App. 1994).

¶37 There is no multiplicity where, as here, the evidence is sufficient to show the commission of separate and distinct acts, "each of which is a crime in its own right regardless of what occurred prior to or thereafter." *State v. Bruni*, 129 Ariz. 312, 320 (App. 1981) (citation omitted). In April 2019, Rix attempted to receive an image of a thirteen-year-old's genitalia. Rix's interaction with the persona concluded when the requested

image was not sent. Then, in May 2019, more than one month later, he initiated a new and separate interaction with the persona, during which he made a second attempt to receive a similar image. Had Rix been successful on both occasions, the sexual exploitation of a minor statute would have allowed prosecutions for both images, even if they were identical. *See Valdez*, 182 Ariz. at 170–71. The charged crimes in the current case are therefore distinguishable from the "single course of conduct" in *Moninger*. The two counts were not based on communications regarding the "same sexual encounter," but on separate requests for sexually exploitive images that would each constitute a crime in their own right. Despite the fact that the counts represent similar types of requests, they did not comprise a single course of conduct. Additionally, we note that the State argued the two requests for images supported the respective counts and the court instructed the jury that it was to decide each count separately. We generally presume the jury follows the court's instructions. *See State v. Payne*, 233 Ariz. 484, 518, ¶ 151 (2013). Rix's convictions and sentences did not violate his double jeopardy protections.

### C.     The Jury Instruction on Exploitive Exhibition Was Proper.

**¶38**         Rix next contends that the court's inclusion of "rectal areas" in the "exploitive exhibition" jury instruction resulted in a duplicitous charge. A duplicitous charge occurs if "the text of an indictment refers only to one criminal act, but multiple alleged criminal acts are introduced to prove the charge," thus creating the possibility of a less than unanimous verdict. *State v. Klokic*, 219 Ariz. 241, 244, ¶ 12 (App. 2008). A criminal defendant has the constitutional right to a unanimous jury verdict, so that a violation of this right constitutes fundamental error. Ariz. Const. art. 2, § 23; *State v. Delgado*, 232 Ariz. 182, 188, ¶ 19 (App. 2013). We do not assess jury instructions in a vacuum, instead looking to the instructions as a whole and in conjunction with counsel's closing argument. *State v. Bruggeman*, 161 Ariz. 508, 510 (App. 1989). The sole purpose of jury instructions is to correctly inform jurors of the applicable law. *State v. Noriega*, 187 Ariz. 282, 284 (App. 1996).

**¶39**         Because Rix did not object to the instruction at trial, he waived all but fundamental error review. *See State v. Valles*, 162 Ariz. 1, 6 (1989). To obtain relief on fundamental error review, a defendant bears the burden of proving that an error occurred and that the error either prejudiced him, or "was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

¶40 Rix claims that the jury instructions on "exploitive exhibition" allowed the jury to render a non-unanimous verdict based on evidence he told the undercover persona he wanted to see both her genitalia and her "sexy ass." Tracking the statutory language and the Revised Arizona Jury Instructions ("RAJI"), the court's definition included the "[e]xploitive exhibition" of "genitals or pubic or rectal areas." *See* A.R.S. § 13-3551(5); RAJI Stat. Crim. 35.51(5) (6th ed. 2022). In closing argument, the State briefly referred to Rix's statement that he wanted to see the undercover persona's "sexy ass," contending it established his sexual motivation in obtaining images of her genitalia. The State argued Rix's requests for images of genitalia from April and May 2019 constituted the charged crimes in each count. Though the phrase "sexy ass" can arguably have various colloquial meanings, the State did not use the phrase in its literal sense and did not directly argue it meant "rectal areas."

¶41 Taken together, the court's instruction that jurors must reach unanimous verdicts as to each count, the evidence used to prove the charged crimes at trial, and the State's focus in closing argument ensured the jury reached unanimous verdicts. Because there is no reason to believe the challenged language in the "exploitive exhibition" instruction impacted the jury's verdict, we find no error, much less fundamental error. *See Delgado*, 232 Ariz. at 188, ¶ 19.

### D. The Superior Court's Jury Instruction on the Undercover Persona Tracked Controlling Statutes and Was Proper.

¶42 Rix finally argues the court erred by instructing the jury that it was "not a defense to prosecution that the other person was an adult posing as a minor," claiming the instruction incorrectly stated the law. Because Rix did not object to the instructions, we again review only for fundamental, prejudicial error. *Escalante*, 245 Ariz. at 140, ¶ 12.

¶43 We review *de novo* whether jury instructions correctly state the law. *State v. Orendain*, 188 Ariz. 54, 56 (1997). We consider the instructions in their entirety and will not reverse a jury verdict based on an erroneous instruction unless the instructions, taken as a whole, could reasonably mislead a jury. *State v. Gallegos*, 178 Ariz. 1, 10 (1994). If a jury instruction is "substantially free from error," the defendant generally suffers no prejudice from its wording. *Id.*

¶44 The State charged Rix with two counts of attempting to sexually exploit a thirteen-year-old undercover persona, both of which constituted dangerous crimes against children under A.R.S. § 13-705. *See*

A.R.S. §§ 13-705(F), (N), (R), -1001(A)(1), -3553(A), (C). Section 13-705 provides, in relevant part, that "[i]t is not a defense to a dangerous crime against children that the minor is a person posing as a minor or is otherwise fictitious." A.R.S. § 13-705(S). The challenged jury instruction tracked the language of the applicable statutes and adequately identified the essential elements of the charged crimes. *See State v. Rios*, 217 Ariz. 249, 251, ¶ 9 (App. 2007) (rejecting a challenge to jury instructions when they mirrored the governing statutes). We also agree with the State that the jury instructions did not relieve the State of its burden of proof, as Rix contends. As the State argues, the jury instructions required the State to prove beyond a reasonable doubt that Rix knowingly attempted to receive visual depictions of a person he believed to be a thirteen-year-old minor engaged in exploitive exhibition. Accordingly, this assertion of error fails.

## CONCLUSION

¶45 For the reasons set forth above, we reverse Rix's convictions and remand the case for a new trial consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED: AA

18