NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

TERRY LEE FICHTELMAN, *Appellant*.

No. 1 CA-CR 23-0008
FILED 12-26-2023

Appeal from the Superior Court in Mohave County
No. S8015CR202100762
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Tanja K. Kelly
*Counsel for Appellee*

The Brewer Law Office, Show Low
By Benjamin M. Brewer
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Maria Elena Cruz joined.

_____

**C A T L E T T**, Judge:

¶1             A jury convicted Terry Fichtelman ("Fichtelman") of sexual conduct with a minor under fifteen years of age.  On appeal, Fichtelman argues the superior court erred in refusing to set aside the jury's finding of emotional harm as an aggravating circumstance.  Fichtelman also argues the superior court abused its discretion in admitting evidence of his prior bad acts.  Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2             G.F. was born on January 6, 2003, and the Fichtelman family adopted her when she was six months old.  Through that adoption, G.F. and Fichtelman, who is 45 years older than her, were step-siblings.

¶3             When G.F. was fifteen, she visited an obstetrician gynecologist ("OBGYN") who confirmed she was pregnant through sexual intercourse.  G.F. told the OBGYN that a 15-year-old boy was the father.  Both the OBGYN and G.F. confirmed that the child was conceived between October 25, 2017 and November 22, 2017, when G.F. was only fourteen years old.  G.F. gave birth to F.F. on July 27, 2018.  The birth certificate did not name a father.

¶4             After investigating and concluding Fichtelman is F.F.'s father, the State of Arizona ("State") indicted Fichtelman for violating A.R.S. § 13-1405(B), which criminalizes sexual conduct with a minor under fifteen years of age.  The State also alleged as an aggravating circumstance that G.F. suffered emotional harm.

¶5             Prior to trial, the State moved to admit character evidence under Arizona Rules of Evidence 404(c) regarding prior bad acts Fichtelman committed against M.C., who Fichtelman sexually abused when she was 11 years old.  In support, the State submitted a psychologist's report.  The psychologist concluded that Fichtelman has "an aberrant sexual propensity" that is "atypical, deviant, engaging in child molest behaviors; that is, sexual contact with anyone 17 or younger since that

person was an adult." She also noted that, as to both acts, the victims were females, ages 11 and 14, both may have looked at Fichtelman as an authority figure, and Fichtelman engaged in identical behavior with both victims.

¶6            Following an evidentiary hearing, the court permitted the State to present other acts evidence and call M.C. to testify. The court allowed the State to present evidence that Fichtelman had one prior conviction relating to M.C., but the court required the State to redact any evidence showing the total number of convictions (over 100) resulting from the crimes. The court also ordered that neither party could introduce evidence that M.C. underwent an abortion stemming from Fichtelman's prior crimes.

¶7            At trial, G.F. testified and denied that Fichtelman is F.F.'s father. G.F. claimed, instead, that F.F. was conceived by an ex-boyfriend. Asked if she ever told anyone or wrote in a letter that Fichtelman had sex with her, G.F. replied no.

¶8            Paternity results indicated that Fichtelman is F.F.'s father. A forensic scientist testified that, based upon those results, Fichtelman is 240 billion times more likely to be F.F.'s father than any unrelated Caucasian male.

¶9            The State also called G.F.'s ex-boyfriend, who testified G.F. reported to him that she had sexual intercourse with Fichtelman. The State also produced a letter G.F. wrote, wherein she stated that "Fichtelman is the father of [F.F.] and . . . . [F.F.] needs *her father* involved in her life[.]" She wrote that if Fichtelman "went to jail or prison he wouldn't be able to help me with my kids *or his daughter*[.]"

¶10           After closing arguments, the court instructed the jury as to other acts as follows:

> Evidence of other acts has been presented. You may consider this evidence in determining whether the defendant had a character trait that predisposed him to commit the crime charged. You may determine that the defendant had a character trait that predisposed him to commit the crime charged only if you decide that the state has proved by clear and convincing evidence that, one, the defendant committed these acts, and two, these acts show the defendant's character predisposed him to commit abnormal or unnatural sexual acts.

3

> You may not convict the defendant of the crime charged simply because you find that he committed these acts or that he had a character trait that predisposed him to commit the crime charged. Evidence of these acts do[es] not lessen the state's burden to prove the defendant's guilt beyond a reasonable doubt.

¶11          The jury found Fichtelman guilty of sexual conduct with a minor of the age of 14 years. The superior court then gave jury instructions about aggravating circumstances, including emotional harm. The instructions to the jury on emotional harm, in relevant part, were as follows: "The [S]tate has alleged the following aggravating circumstances: One, the victim suffered emotional harm. All of you must agree before you may find an aggravating circumstance proven beyond a reasonable doubt or not proven." The jury found the existence of emotional harm "on the charge of count 1" as an aggravating circumstance.

¶12          Fichtelman moved for a new trial, arguing the superior court erred in admitting the other acts evidence involving M.C. because that evidence was unduly prejudicial. Fichtelman also moved for judgment of acquittal, arguing the jury instruction regarding the emotional harm aggravating circumstance was legally deficient and there was insufficient evidence to support a finding of emotional harm. The superior court denied both motions. The court sentenced Fichtelman to 25 years in prison.

¶13          Fichtelman timely appealed. We have jurisdiction. *See* A.R.S. §§ 12-120.21(A)(1), 13-4031.

## DISCUSSION

### I.     Emotional Harm Aggravating Circumstance

#### A.     Sufficiency of Evidence

¶14          Fichtelman challenges the superior court's denial of his post-verdict Rule 20 motion pertaining to the aggravating circumstance of emotional harm. Fichtelman maintains there was insufficient evidence to support the existence of that aggravating circumstance.

¶15          "[T]he court must enter a judgment that an aggravating circumstance . . . was not proven if there is no substantial evidence to support the allegation." Ariz. R. Crim. P. 20(a)(2). We, therefore, ask only whether the record contains "substantial evidence to warrant a conviction." *State v. West*, 226 Ariz. 559, 562 ¶ 14 (2011). Substantial evidence, whether

circumstantial or direct, is that which offers "such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Pena*, 209 Ariz. 503, 505 ¶ 7 (App. 2005). Evidence is sufficient to support denying a Rule 20 motion if, after viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Parker*, 231 Ariz. 391, 407 ¶ 70 (2013).

¶16 For sentencing purposes, the trier of fact shall consider emotional harm to the victim as an aggravating circumstance. A.R.S. § 13-701(C), (D)(9). Emotional harm may consist of a variety of mental states, including "fright, fear, sadness, sorrow, despondency, anxiety, humiliation, depression," and others. *State v. Coulter*, 236 Ariz. 270, 274 ¶ 7 (App. 2014) (citing Restatement (Third) of Torts § 45 cmt. a (2012)).

¶17 Fichtelman argues there was insufficient evidence to show he caused G.F. emotional harm. He relies on G.F.'s testimony that she loved him, that he has supported her and F.F., and that he helped G.F.'s mother and father. Fichtelman also points to G.F.'s testimony that she did not want him to be in trouble or have any consequences. Fichtelman argues that this "very positive testimony" does not show he caused G.F. emotional harm.

¶18 The record contains substantial evidence supporting the jury's conclusion that Fichtelman caused G.F. emotional harm, starting with the underlying circumstances of Fichtelman's crime. Fichtelman's father and step-mother adopted G.F. when she was six months old. After being released from prison for sexually abusing an eleven-year-old girl, Fichtelman moved into a trailer on the property where G.F. lived. Fichtelman, who was then around 59 years old, had sexual intercourse with, and impregnated, G.F. when she was only 14 years old. Jurors "are entitled to rely on and to relate their own common sense and life experiences during deliberations." *State v. Lindeken*, 165 Ariz. 403, 406 (App. 1990). Even without G.F. expressly stating that Fichtelman's crime caused her emotional harm, the jury could conclude from her testimony and demeanor, along with the other evidence presented at trial, that emotional harm resulted when Fichtelman committed statutory rape against his 14-year-old step-sister.

¶19 G.F.'s testimony regarding Fichtelman does not negate a finding that his crime caused her emotional harm. The jury could have concluded, for example, that G.F. lied to protect Fichtelman. After all, G.F. also testified that Fichtelman is not F.F.'s father, despite DNA results

demonstrating otherwise and her prior statements to others that Fichtelman is F.F.'s father.

¶20        Lastly, when asked directly whether she believed Fichtelman was F.F.'s father, G.F. responded as follows: "You want me to tell you the truth?  The truth is, is that I've had sex with a lot of dudes, and trust me, I'm a slut.  I'm a whore.  I don't care what people call me.  But the truth is I don't have recollections of anything that [Fichtelman] did besides help me and support me through my family's problem.  I need a minute."  In multiple different ways, this self-degrading response further supports the jury's finding.  There was more than sufficient evidence to support the jury's emotional harm finding.

### B.        Jury Instruction

¶21        Fichtelman next argues that the jury instruction for emotional harm was legally insufficient because it did not tell the jury that it had to find that Fichtelman *caused* G.F. emotional harm.  Failure to object to jury instructions at trial waives the issue unless the court commits a fundamental error.  *State v. Kinkade*, 140 Ariz. 91, 94 (App. 1984).  Fichtelman did not object to the instruction at trial and did not propose a different instruction.  We, therefore, review the instruction given for fundamental error.  *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018).

¶22        An error is fundamental if it: (1) "went to the foundation of the case"; (2) "took from the defendant a right essential to his defense"; or (3) "was so egregious that he could not possibly have received a fair trial."  *Id.* at 142 ¶ 21.  "If the defendant establishes fundamental error under prongs one or two, he must make a separate showing of prejudice."  *Id.*  If the defendant establishes the third prong, we must grant a new trial.  *Id.*

¶23        We read jury instructions "as a whole to ensure that the jury receive[d] the information it need[ed] to arrive at a legally correct decision."  *State v. Prince*, 226 Ariz. 516, 536 ¶ 77 (2011).  We presume that jurors follow the court's instructions.  *State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006).  To prove prejudice from a jury instruction, one must show that a "reasonable, properly instructed jury could have reached a different result."  *State v. Dickinson*, 233 Ariz. 527, 531 ¶ 13 (App. 2013) (internal quotations omitted).

¶24        The court informed the jury that "[t]he state has alleged the following aggravating circumstances:  One, the victim suffered emotional harm."  The court then informed the jury that it would receive a verdict form allowing it to decide whether the State proved the following finding: "We the jury . . . find *on the charge* of sexual conduct with a minor under 15

years of age . . . and the aggravating circumstance is the victim suffered emotional harm." The jury found that the State had proven beyond a reasonable doubt that the victim had suffered emotional harm "on the charge of Count 1: Sexual Conduct with a Minor Under Fifteen Years of Age[.]"

¶25 Fichtelman contends the emotional harm instruction was erroneous because it did not contain a "causation requirement." He maintains the instruction precluded a fair trial because the jury "may have found [G.F.] experienced emotional harm, but not because of anything [Fichtelman] did, which ultimately punished him for conduct of others." He speculates that the "jury could have found the victim was emotionally harmed, based on the many sexual encounters she had, but not because of [Fichtelman's] conduct, as there was no evidence presented to support this."

¶26 Fichtelman has not established error. The court correctly instructed the jury that they were required to consider and find emotional harm "on Count 1." Based on that instruction, a reasonable jury would comprehend that consideration of emotional harm is limited to the impacts made on the victim by the crime of conviction. *State v. Eastlack*, 180 Ariz. 243, 259 (1994) ("A trial court is not required to define every phrase or word used in the instructions, especially when they are used in their ordinary sense and are commonly understood."). Moreover, the evidence and arguments at trial focused on Fichtelman's actions. During closing arguments, counsel for both parties argued whether Fichtelman's crime had caused G.F. emotional harm. For example, defense counsel argued that the State "has not proven any emotional harm that was caused by [Fichtelman] to [G.F.]." *See State v. Murray*, 250 Ariz. 543, 553 ¶ 37 (2021) ("Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions." (citation omitted)).

¶27 Finally, based on the evidence and arguments presented at trial as to emotional harm (*see infra* ¶¶ 18-20), Fichtelman has not established that the instruction he now claims should have been given could have resulted in a different verdict, and he has, therefore, not established fundamental error. *See Dickinson*, 233 Ariz. at 531 ¶ 13; *State v. Islas*, 132 Ariz. 590, 591 (App. 1982) ("[P]rejudice will not be presumed but must appear from the record.").

## II.    Other Acts Evidence

¶28        Fichtelman argues that the superior court abused its discretion in granting the State's 404(c) motion, allowing other acts evidence to demonstrate Fichtelman has a propensity for aberrant sexual behavior.  Specifically, Fichtelman argues the other acts were too dissimilar and remote in time for the probative value of the evidence to outweigh the danger of unfair prejudice.  "We review the admission of other-act evidence for an abuse of discretion."  *State v. Yonkman*, 233 Ariz. 369, 373 ¶ 10 (App. 2013).  We affirm a trial court's Rule 404(c) evidentiary ruling on any basis supported by the record.  *State v. James*, 242 Ariz. 126, 134 ¶ 28 (App. 2017).

¶29        Generally, Rule 404(b) prohibits the admission of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  Ariz. R. Evid. 404(b)(1).  But there is an exception allowing other act evidence if relevant to show the defendant "had a character trait giving rise to an aberrant sexual propensity to commit the offense charged."  Ariz. R. Evid. 404(c).

¶30        Such evidence should be admitted only after the court makes three findings.  Ariz. R. Evid. 404(c)(1).  First, the evidence must be "sufficient to permit the trier of fact to find that the defendant committed the other act."  Ariz. R. Evid. 404(c)(1)(A).  Second, the commission of the other act must provide a "reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged."  Ariz. R. Evid. 404(c)(1)(B).  Third, the evidentiary value of proof of the other act must not be "substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors."  *See* Ariz. R. Evid. 404(c)(1)(C).

¶31        In making that last determination, courts may take into consideration the remoteness of the other act, similarity or dissimilarity of the other act, the strength of evidence that the defendant committed the other act, frequency of the other acts, surrounding circumstances, relevant intervening events, and other relevant factors.  Ariz. R. Evid. 404(c)(1)(C)(i)-(viii).  If a court determines the evidence is admissible, it must give a limiting instruction regarding its proper use.  Ariz. R. Evid. 404(c)(2).

¶32        The superior court made all three required findings.  Fichtelman does not take issue with the first two.  He argues, however, that the superior court abused its discretion in finding that the "probative value of admitting the other act evidence was not substantially outweighed by the fear of unfair prejudice."

¶33        Unfair prejudice results when evidence tends to result in a decision on an improper basis, such as emotion, sympathy, or horror. *State v. Schurz*, 176 Ariz. 46, 52 (1993). The superior court has broad discretion in determining the balance between the probative value of the challenged evidence against its potential unfair prejudice. *State v. Togar*, 248 Ariz. 567, 574 ¶ 23 (App. 2020). A key consideration is "whether the evidence can be narrowed or limited to protect both parties by minimizing its potential for unfair prejudice while preserving its probative value." *State v. Rix*, ___ Ariz. ___, 536 P.3d 253, 261 ¶ 22 (App. 2023) (quotation marks omitted).

¶34        Fichtelman asserts the other acts here were too remote because of a 28-year span between the two incidents. But defendants are not allowed to rely on time spent incarcerated when arguing remoteness. *See State v. Super. Ct.*, 129 Ariz. 360, 362 (App. 1981) ("[T]he defendant should not be allowed to rely on the fact that . . . no aberrant sexual acts were shown to have occurred . . . [when] defendant was isolated from contact with children."); *see also State v. Bible*, 175 Ariz. 549, 575 (1993) (deducting served time from overall difference in time between prior and alleged acts). Disregarding the approximately nineteen years Fichtelman spent incarcerated (1991–2010), there were roughly seven years between the prior acts and the act in this case. We agree with the superior court that the acts were not too remote.

¶35        Fichtelman also argues the acts were too dissimilar. In doing so, he contrasts the ages of the victims (11 in the prior act and 14 here); he contrasts allegations of rape in the prior act with what he claims was "presumably consensual" sexual intercourse here; he contrasts a minimum of 30 instances of sexual acts in the prior case with what he claims was a single occurrence here; he contrasts the prior victim being a foster child with his current victim being his stepsister; and he contrasts the prior victim testifying about his acts with G.F. denying his acts.

¶36        We agree with the superior court's finding, however, that these acts are sufficiently similar. First, both victims, because of their ages (11 and 14), are protected under A.R.S. § 13-1405(B), and both were non-blood related, young females. Second, Fichtelman took advantage of a position of trust in both cases—M.C. was a child living in Fichtelman's foster home and G.F. was a child living at the same address as her significantly older step-brother. The State presented expert testimony that children are more likely to listen to older people, and relatives with authority. Finally, the nature of the sexual intercourse was similar in both cases, and there was evidence that Fichtelman attempted to coerce both victims to maintain secrecy.

¶37        Regardless, even if Fichtelman's other acts were not perfectly similar to his current crime, similarity is only one factor in the analysis. *See* Ariz. R. Evid. 404(c)(1)(C). We conclude that the other factors sufficiently outweigh any dissimilarity between the acts, and that the superior court did not abuse its discretion in concluding that the factors, on the whole, support admission.

¶38        Despite allowing the other acts evidence, the court gave a limiting instruction regarding proper use of the evidence. Moreover, the superior court allowed evidence of only one prior conviction and not that "there might be 100 other convictions that exist" stemming from other acts committed against M.C. Neither party was permitted to introduce evidence that M.C. had an abortion. This narrowing of the evidence appropriately protected Fichtelman from unfair prejudice while preserving its probative value. *See Rix*, 536 P.3d at 261 ¶ 22. The court did not abuse its discretion in admitting evidence of the other acts Fichtelman committed against M.C.

## CONCLUSION

¶39        We affirm.

